Michael R. BOWLIN, Appellant,

v.

STATE of Alaska, Appellee.

No. 5545.

Court of Appeals of Alaska.

April 8, 1982.

Daniel T. Saluri, Fairbanks, for appellant.

James P. Doogan, Jr., Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., SINGLETON, J., and CUTLER, District Court Judge.*

## OPINION

BRYNER, Chief Judge.

Michael Bowlin appeals from sentences imposed following his conviction on pleas to three counts of assault with a dangerous weapon and one count of committing lewd and lascivious acts toward a child. Former AS 11.15.220 and 11.15.134. Bowlin received a sentence of five years with two and one-half years suspended on each of two counts of assaulting his wife with a loaded gun, a sentence of five years for a count charging repeated assaults against his young stepson, and a sentence of ten years for committing lewd and lascivious acts toward his minor stepdaughter. The sentences run consecutively, making an aggregate sentence of twenty-five years with five suspended.

Bowlin has raised only one point that is necessary to discuss in detail. Prior to the sentencing, the superior court received a letter from Melissa Verginia, legal advocate at the Women in Crisis Center in Fairbanks. Ms. Verginia had had extensive contact with Bowlin's wife and stepchildren. The letter detailed a sordid history of extensive physical and sexual abuse against the family members and gave Ms. Verginia's impressions of the Bowlin family, emphasizing the traumatic effect of Bowlin's abuse on his wife and her children. Ms. Verginia recommended that a harsh sentence be imposed.

The letter was mailed directly to Judge Hodges, the sentencing judge, and was ultimately placed in the court file. Neither the defense counsel nor the prosecutor was aware of the letter until after the sentencing; Bowlin's lawyer discovered it while preparing this appeal.

Bowlin now contends that he was denied due process because he was not shown the letter before his sentencing. He asserts that this "forceful letter . . . may certainly have influenced the Court in the imposition of sentence," noting that the judge did not, on the record, exclude the possibility that he had considered and been influenced by the letter.

We agree with Bowlin that a letter received by the court concerning sentencing of a particular defendant should be disclosed to both parties before sentencing. Unless entirely disregarded by the court, such a letter becomes, in effect, a part of the presentence report, even if it was unsolicited. Criminal Rule 32(c)(2) requires disclosure of the presentence report to the attorneys for the state and defendant in all cases.[1]

Past cases discuss at length how the sentencing judge may consider and rely upon background information about the defendant, including his involvement in other criminal activity of which he has not been convicted, providing the defendant is offered the opportunity to rebut or to explain the allegations. *See Hunter v. State*, 590 P.2d 888, 901-02 (Alaska 1979); *Nukapigak v. State*, 562 P.2d 697, 701–02 (Alaska 1977), *aff'd on rehearing*, 576 P.2d 982 (Alaska 1978); *Hixon v. State*, 508 P.2d 526, 527 n.1 (Alaska 1973). The principle behind such cases extends to unsolicited letters received by the court. The requirement that the defendant be apprised of information presented to the court for use in sentencing so that he may effectively counter it cannot

---

* Cutler, District Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The report must also be made available to the defendant personally, unless the court enters on the record reasons for finding that such disclosure would prove detrimental to the safety of the public or to the rehabilitation of the defendant. Alaska R.Crim.P. 32(c)(2).

logically be limited to the formally prepared presentence report. *See generally United States v. Woody*, 567 F.2d 1353, 1361 (5th Cir. 1978), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (1978) (defendant has a constitutional right to know and to test the accuracy of statements on which the sentencing judge relies); *United States v. Huff*, 512 F.2d 66, 71 (5th Cir. 1975) (sentence vacated because judge relied on information furnished by the prosecution when defendant was given no opportunity to rebut prejudicial material).

Accordingly, we hold that judges must make available to counsel for the state and the defendant any unsolicited letters received concerning sentencing of a particular defendant. Judges may, of course, disclaim reliance on particular letters. *See, e.g., Thurlkill v. State*, 551 P.2d 541, 543–45 (Alaska 1976). Conversely, judges may inform the parties that, in the absence of a valid objection, such letters will be considered at sentencing. In either event, the sentencing record must affirmatively reflect whether unsolicited letters received by the court have been considered at sentencing.

The state maintains that any error in failing to make Bowlin aware of Ms. Verginia's letter before sentencing does not warrant a reversal of his sentence. It is argued that all of the facts brought out in the letter could be gleaned from other sources in the record properly before the court. Because Bowlin did not contest the facts contained in these other sources, the state maintains that Ms. Verginia's letter, even if considered by the sentencing judge, could not be deemed to have prejudiced Bowlin in any way.[2] We are unable to agree with the state's position.

For the most part, the factual statements about Bowlin's case contained in Ms. Verginia's letter may independently be found, either directly or by inference, in the presentence and psychiatric reports that were properly considered at sentencing.[3] However, the same cannot be said of the opinions that Ms. Verginia expressed.

In expressing her views to Judge Hodges, it is significant that Ms. Verginia represented herself to be an individual who had substantial experience dealing with the type of situation involved in this case; she further claimed to have grown intimately acquainted with Mrs. Bowlin and her two children over a substantial period of time prior to sentencing. For these reasons, her views might have been perceived as being particularly worthy of attention. Unlike the writers of the psychiatric and presentence reports before the court, Ms. Verginia openly and exclusively advocated the interests of Mrs. Bowlin and her children. The strong personal views expressed in the challenged letter are not duplicated by other portions of the record, and they constituted a direct, unequivocal and potentially effective effort to persuade the court that a particularly harsh sentence would be justified for Bowlin. We cannot consider these statements as merely cumulative. Nor do we think, under the circumstances, that Bowlin's failure to contest the facts contained in the record properly before the court can properly justify depriving him of the right to challenge the accuracy of the

2. The state relies upon decisions holding that unverified information may properly be considered at sentencing unless the information is actually contested by the defendant. *See, e.g., Cochran v. State*, 586 P.2d 175 (Alaska 1978); *Nukapigak v. State*, 576 P.2d 982 (Alaska 1978).

3. Although most of the facts contained in the letter could be found elsewhere in the record, this is not true of all of the relevant facts; the challenged letter did add some significant details. It described one assault against Mrs. Bowlin more graphically than did the presentence report, indicating that Mrs. Bowlin spent part of one night hiding under a bed and that she had suffered numerous little puncture wounds from being jabbed by her husband with a razor-tipped arrow. Also new was the description of an alleged threat by Bowlin that he would hire somebody to kill his wife if she went to the police. Specific descriptions in the letter about the children's behavior toward Ms. Verginia are also not duplicated elsewhere in the record.

**4**

assertions contained in Ms. Verginia's letter.[4]

■■ There is another, more compelling reason why the trial judge's failure to disclose the challenged letter to the parties cannot be deemed harmless. For the sentencing judge to have considered a letter such as Ms. Verginia's without first disclosing it to the parties would have amounted to an improper and prohibited *ex parte* contact. The Alaska Code of Judicial Conduct, Canon 3A(4), provides in this regard:

A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

Nothing in the broad language of this prohibition exempts *ex parte* communications relating to the sentencing of particular individuals; indeed, it is clear that *ex parte* communications relating to a defendant's sentence cannot be condoned. *See Sonnier v. State*, 483 P.2d 1003, 1005 (Alaska 1971).[5]

■■ It is not clear from the record to what extent, if any, Judge Hodges relied on the challenged letter, and in fact it cannot be said with certainty that the judge even read it. This does not, however, obviate the need for resentencing. We believe that Canon 3A(4) of the Alaska Code of Judicial Conduct is directed as much at the appearance of judicial impropriety as it is at actual impropriety.[6] In the area of criminal sentencing, the need to avoid any appearance of impropriety is particularly great. Thus, in *Thurlkill v. State*, 551 P.2d at 543–44, the Alaska Supreme Court quoted with approval the following comment, written by Justice Erwin:

While it can be argued that a trial judge is able by virtue of legal training and experience to ignore irrelevant data in passing sentence, this does not dispose of a basic rationale underlying sentence appeals—rehabilitation of the offender by affording him an opportunity to assert grievances regarding his sentence. The judge may in fact be able to disregard unverified derogatory information, but it is doubtful whether a lay defendant will attribute such impartiality to him. Thus, the defendant may often believe his sentence is based in part upon incorrect allegations. His consequent reaction to the system which permits this may well hinder or destroy any rehabilitative effect of the sentence.[7]

---

4. In reaching this conclusion, we recognize that the decision whether to present evidence contesting facts contained in a sentencing record will often be based not only on the nature of the facts themselves, but also on the manner in which they are presented, the emphasis that they are given, and the persuasive force that they are perceived to have. From Bowlin's failure to contest the facts contained in the psychiatric and presentence reports, we do not believe it fair to infer that he would not have attempted to discredit the strong, unequivocal and extremely damaging opinions contained in Ms. Verginia's letter.

5. In *Sonnier*, a judge, after imposing a relatively lenient sentence, was contacted by a relative of the defendant's victim who persuaded the judge that a more severe sentence was needed. Within several hours of the initial sentencing, the judge reconvened court and imposed a new

sentence that substantially increased the sentence originally imposed. Although the court in *Sonnier* reversed on double jeopardy grounds, it expressly condemned the *ex parte* contact with respect to the new sentence. Relying on former Canon 17 of the Canons of Judicial Ethics, which was similar to Canon 3 A(4), the court characterized the *ex parte* contact as plainly improper. *See also Thurlkill v. State*, 551 P.2d at 543–45; *Speidel v. State*, 460 P.2d 77, 83–84 (Alaska 1969).

6. *See also* Canon 2B, which states that a judge should not "convey or permit others to convey the impression that they are in a special position to influence him."

7. Erwin, Five Years of Sentence Review in Alaska, 5 UCLA-Alaska L.Rev. 1, 16 (1975) (footnotes omitted).

In the present case, the sentencing judge's failure to disclose to the parties the letter written by Ms. Verginia, which was specifically addressed to him and was included in the court's file, creates a strong appearance that Bowlin's sentence might have been affected by prohibited *ex parte* consideration of this undisclosed correspondence. In the absence of any affirmative statement in the record to assure that the sentencing court actually disregarded the letter in imposing Bowlin's sentence, we believe it necessary to remand for resentencing, so that any appearance of impropriety can be dispelled.

Since Bowlin's case will have to be remanded for resentencing, we need not consider the other major arguments that he has raised.[8] We deem it appropriate, though, to comment on two narrow issues. The state has conceded that Judge Hodges, apparently by oversight, improperly failed to include any recommendation that Bowlin receive psychiatric care during his term of imprisonment. *See, e.g., Bryant v. State,* 623 P.2d 310, 312 n.2 (Alaska 1981); *Nielsen v. State,* 623 P.2d 304, 310 (Alaska 1981); *Notaro v. State,* 608 P.2d 769, 770 & n.3 (Alaska 1980). If, upon resentencing, Judge Hodges imposes a term of incarceration, an appropriate recommendation for psychiatric treatment should be included in the judgment.

We note, additionally, that Bowlin was sentenced to serve consecutive terms of imprisonment exceeding the maximum possible sentence that he could have received for any single count. Under these circumstances, the sentencing judge was obligated to make a specific finding that confinement for the combined period was necessary to protect the public. *Mills v. State,* 592 P.2d 1247, 1248 (Alaska 1979); *Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977). No such finding was made below. Accordingly, we will require that, upon remand, an appropriate finding be made on the record by the sentencing judge in the event similar consecutive terms are imposed.

The sentences are VACATED, and this case is REMANDED for resentencing.

COATS, J., not participating.

---

8. Bowlin has additionally argued that the sentencing judge paid insufficient attention to rehabilitation, that the judge erred in not reducing his sentence because of cooperation with law enforcement officials, and that the court erred in terming him the worst offender on the lewd and lascivious acts charge. We express no opinion as to these arguments.