Regina A. TURINSKY, Appellant,

v.

Dennis A. LONG, Appellee.

No. S–5784.

Supreme Court of Alaska.

Feb. 2, 1996.

Rehearing Denied April 9, 1996.

Regina A. Turinsky, pro se, Anchorage.

No appearance by Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

EASTAUGH, Justice.

## I.  INTRODUCTION

We deal here with another round in a long battle over child custody, visitation, and support.  The disputes have been continuous since Regina Turinsky and Dennis Long were divorced in 1987.  They have been before this court once before.  *Long v. Long,* 816 P.2d 145 (Alaska 1991).  Regina Turinsky argues in the present appeal that the trial court failed to issue a precise visitation order, improperly calculated child support, and may have improperly considered ex

parte communications supporting Dennis Long.

We vacate the child support order entered June 7, 1993, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Dennis Long and Regina Turinsky[1] were granted a partial divorce in July 1987; child custody and property disputes were to be settled at a later time. During their marriage they had four children: Virginia, born October 7, 1973; Rebecca, born June 4, 1976; Gregory, born April 18, 1980; and Jonathan, born January 18, 1983. *Long,* 816 P.2d at 149. Turinsky and Long have waged a bitter battle over custody since their divorce.

The trial court originally gave Long custody of the oldest daughter, Virginia, and Turinsky custody of the three younger children, Rebecca, Gregory, and Jonathan. In August 1989 the trial court awarded Long custody of all four children and gave Turinsky liberal visitation rights with the three younger children and "optional" visitation rights with Virginia.[2] *Id.* at 150. Turinsky appealed the custody and visitation order. In 1991 this court affirmed the change of custody, but found the visitation order to be "unacceptably ambiguous." *Id.* at 158. The trial court had ignored the shared custody provision of Civil Rule 90.3(b) and "improperly coordinated, or failed to coordinate, the visitation and support awards in this case." *Id.* at 158.

We consequently reversed the child support and visitation awards and remanded the case for redetermination of those issues. In a footnote, we emphasized the importance of a precise visitation decree. We stated:

> The visitation decree in this case is of primary importance.... Upon remand, the court should very carefully and precisely fix the terms of visitation to facilitate

the chances that the custody and visitation schemes will work in the best interests of the children.

*Id.* at 158 n. 12.[3]

The acrimony between the parties continued after we decided the first appeal. Long and Turinsky refused to cooperate over visitation, requiring the court and a guardian ad litem to referee disputes over proper visitation. The parties also fought bitterly over the financial arrangements for their children's welfare.

The trial court conducted a hearing in July 1992 "to resolve all pending financial issues between the parties, including the visitation/support issue remanded by the supreme court." The parties argued at that hearing about financial disputes, but did not reach the visitation and child support issues. The hearing continued on October 1 for the purpose of resolving all pending visitation and child support issues, as required by our remand.

There was a lengthy discussion of visitation for Gregory and Jonathan at the October 1 hearing. The court decided that weekend visitation would start Friday after school and end Monday when Turinsky dropped the boys at school. Weekend visitation was to take place every other weekend. The non-school year and holidays were also discussed. Thanksgiving was to be split equally. The parent with weekend custody would have the boys Saturday and Sunday; the other parent would have the boys Thursday and Friday. The parties also worked out Christmas 1992.[4] They divided Spring Break 1993 equally and divided summer into two three-week periods of visitation with alternate weekend visitation. No written order ever set out this relatively specific visitation schedule.

As the October 1 hearing ended, the trial court stated that it did not have time to

---

1. Regina Turinsky was formerly Mrs. Long. She has since remarried and taken the last name of her present husband.

2. The original visitation order is not in the record. Additional information concerning the early chapters of this dispute can be found in *Long v. Long,* 816 P.2d 145 (Alaska 1991).

3. Superior Court Judge Victor Carlson entered the August 25, 1989 order and several later orders affecting custody. The case was reassigned to Superior Court Judge John Reese at some date not apparent from the appellate record.

4. It is unclear whether the arrangement for Christmas 1992 was limited to that year or was to be permanent.

address child support and asked the parties to submit the necessary information for a child support order. The parties then filed income statements and memoranda. Child support arrearages were not addressed at the hearing. A written child support order was not issued until June 7, 1993. On that day, the court issued its "Ruling on Child Support Issues." It applied Civil Rule 90.3(a), which determines child support in a primary custody situation, and held that Turinsky was to pay Long $284 per month for the support of Rebecca, Gregory, and Jonathan. The order was entered nunc pro tunc to September 1, 1989.

Turinsky filed her notice of appeal on July 7, 1993.[5] Although given notice that he could file a brief, Long has not participated in this appeal.

## III. *DISCUSSION*

■ Turinsky appeals the June 7, 1993 child support order. She argues that the trial court failed to issue a detailed visitation order, as required by our decision in *Long v. Long*, 816 P.2d 145 (Alaska 1991), that it erroneously calculated child support under Civil Rule 90.3,[6] and that it may have inappropriately considered ex parte communications favoring Long.

### A. *Visitation Order*[7]

■ The October 1, 1992 hearing set visitation for the two boys. While the trial court

has never issued a written order memorializing the visitation schedule established at that hearing, the oral order is sufficiently detailed to satisfy our instructions on remand.[8]

■ The court did not address Rebecca's visitation at the October hearing. Her visitation was then governed by a June 12, 1992 order that stated that visitation between Turinsky and Rebecca would be "at least one Sunday per month and at the counselling sessions.... Rebecca may visit with her mother at additional reasonable times as she and her mother may agree from time to time."

■ Rebecca's visitation order does not specify the exact number of days Rebecca was to visit with her mother. We recognize that there will be times, particularly in situations in which there is an older child who is more independent and may be estranged from the non-custodial parent, when an order providing for "reasonable visitation" is appropriate. *Cf. Charlesworth v. State, Child Support Enforcement Div.*, 779 P.2d 792, 794–95 (Alaska 1989) (affirming support award where dissolution agreement provided for "reasonable visitation"). Although it would have been preferable to address Rebecca's visitation at the October 1992 hearing, the June 12, 1992 order exactly specified Turinsky's minimum visitation rights ("at least one Sunday per month and at the counseling sessions"). The court did not abuse its discretion in permitting Rebecca and her moth-

---

5. Disputes between Turinsky and Long have continued in the trial court since Turinsky commenced this appeal. Most of the continuing disputes are not before us and are not reflected in the record. However, one event is significant. On August 30, 1993, the court entered an interim child custody order changing Rebecca's custody from Long to Turinsky. The court issued an interim child support order on October 26, 1993. Unlike the child support order of June 7, 1993, this interim support order calculated child support under Rule 90.3(b) and required Long to pay $580 per month. The trial court made this custody and support arrangement permanent on November 12, 1993.

6. Alaska Civil Rule 90.3 was amended by Supreme Court Order 1192, effective July 15, 1995. These amendments do not apply to this appeal. Our citations to Rule 90.3 and the commentary to Rule 90.3 are to the Alaska Rules of Court 1994–95 Main Edition (Book Publishing Co.).

7. The trial court has broad discretion in child custody decisions. *Evans v. Evans*, 869 P.2d 478, 479 (Alaska 1994). Its determination will not be disturbed unless the record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion. *Id.*

8. In a July 27, 1993 order the trial court told the parties that it would "enter its own order reducing its October 1, 1992 visitation order to writing." The record does not reveal why no written visitation order for the boys was ever entered. We strongly encourage the trial court to execute this intention and issue a precise *written* order that comprehensively addresses visitation for the boys. A written order might help the parties adhere to the trial court's intentions when it orally specified the visitation schedule on October 1, 1992.

er to agree on additional visitation at reasonable times.

■ Trial courts should recognize that the exercise of additional visitation in accordance with such an order potentially affects the total amount of custody and therefore child support. Such an order may encourage collateral disputes about the exercise of visitation and child support. The parties must be free to seek amended prospective support orders based on realistic estimates of the total amount of custody the parents will each exercise. Flexible custody orders potentially burden the parties and the trial court with otherwise avoidable motions to modify support orders. In the circumstances of this case, however, the trial court did not abuse its discretion in entering the visitation order for Rebecca.[9]

## B. *The Child Support Award*

### 1. *Child support hearing*

■ Turinsky argues that the court erred by failing to conduct a hearing on child support issues. She cites this court's opinion in *Adrian v. Adrian,* 838 P.2d 808, 811 (Alaska 1992), for the proposition that Rule 90.3 does not authorize "child support trials by affidavit."

■ A hearing is not required for all child support disputes. In *Epperson v. Epperson,* 835 P.2d 451, 453 (Alaska 1992), we held that a hearing is not necessary if there is no genuine issue of material fact before the court. The parties do not argue that the adjusted income levels used by the court are inaccurate. This factor distinguishes *Adrian,* where one party contested the other's income statement and we held that an evidentiary hearing would be appropriate. 838 P.2d at 812. *Adrian* did not go so far as to require a hearing in all child support cases. As there is no material factual dispute regarding child support in this case, the court

did not err in deciding child support without a hearing.

### 2. *Calculation of child support*

■ Turinsky argues that the trial court committed two errors in calculating child support.[10] First, it erroneously based child support on the amount of visitation actually exercised, rather than the amount of visitation awarded. Second, it erroneously used Civil Rule 90.3(a) rather than Civil Rule 90.3(b) to calculate child support.

The June 7, 1993 child support order states:

Since 1989 the minor children, as a group, have spent on average less than 30% of the time with their mother. Part of the missed time was due to improper failure of Mr. Long to insist that the children visit, part was due to improper conduct by Ms. Turinsky and her husband. The current order places the two minor boys with their mother about 32% of the time, and the minor daughter with the mother a much smaller portion of the time.

Considering the placement history and the current order, it is fair to say that support should be calculated under part (a) of the rule, i.e. 33% of adjusted income to be paid by the noncustodial parent, Ms. Turinsky.

The order thus finds that the children as a group spent less than 30% of their time with Turinsky due partly to Long's "improper failure" to insist that the children visit, and partly to "improper conduct" by Ms. Turinsky and her husband. From that, the trial court appears to have decided that the parents did not share custody during the entire period in dispute and that support should be calculated under Rule 90.3(a).

■ By relying on the amount of visitation actually exercised to determine that Rule 90.3(a) applied, the trial court potential-

---

9. The dispute about Rebecca's visitation potentially affects only child support issues; the dispute is otherwise moot because Rebecca reached majority in June 1994 (and is thus no longer subject to court-ordered visitation), and because the court awarded Turinsky custody of Rebecca beginning August 30, 1993.

10. Whether the trial court used the correct method of calculating child support is a matter of law, therefore we give no deference to the trial court's decision. *Charlesworth v. State, Child Support Enforcement Div.,* 779 P.2d 792, 793 (Alaska 1989).

ly rewarded Long for interfering with Turinsky's visitation rights.

■ According to the commentary to Rule 90.3, "A denial of visitation may not be countered with a reduction in support." Alaska R.Civ.P. 90.3 commentary VI B(8). This comment appears to be directed primarily at reductions in payments by the obligor parent in retaliation for visitation denied by the custodial parent. Nonetheless, the same rationale prevents the court from awarding child support on the basis of a denial of visitation rights. Child support awards should be based on a custody and visitation order. If the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order.[11] *Cf. Karpuleon v. Karpuleon,* 881 P.2d 318, 320 (Alaska 1994) (burden is on parents to apply promptly for modification when a child changes residency).

We hold that the trial court erred to the extent it based its calculation of support arrearages on the visitation exercised, rather than the visitation ordered. (We also note that the record does not support the court's finding that part of the missed visitation was attributable to improper conduct of Turinsky. Long, however, was cited several times for his failure to allow the children to visit Turinsky.)

■ Turinsky next argues that the trial court erred in applying Rule 90.3(a) rather than Rule 90.3(b) to determine child support because it erroneously found Long to have "sole custody" of the minor children in its June 7, 1993 order.

Child support is calculated under Civil Rule 90.3(a) when one parent is awarded "sole or primary physical custody." Child support is calculated under Civil Rule 90.3(b) when parents are awarded "shared physical custody." Civil Rule 90.3(c) recognizes exceptions to these methods of calculation.

To determine whether the trial court applied the correct rule and correctly calculated child support, it is necessary to determine the terms of the orders governing custody and visitation at relevant times. (The period between entry of the order effective August 25, 1989, and commencement of Turinsky's appeal from the June 7, 1993 order is pertinent here.) The circumstances potentially complicate this determination. Interim orders affected visitation. Even before we issued our 1991 decision remanding the case, the trial court entered an order on June 25, 1990. That order arguably altered visitation for Rebecca, and possibly for Virginia as well. It increased Turinsky's visitation rights for the boys, but we cannot tell whether it gave Turinsky shared custody of the boys when Long had primary custody of Rebecca and Virginia. Likewise, the trial court's oral October 1, 1992 order affected Turinsky's visitation rights with the boys; she claims it gave her visitation 32% of the year, and thus gave her shared custody of the boys. Moreover, we previously found the custody order which was effective August 25, 1989, to be "unacceptably ambiguous," *Long,* 816 P.2d at 158. Although that ambiguity probably has no bearing because it relates only to Virginia's visitation rights, the parties may disagree. Finally, Virginia was apparently emancipated in May 1991, and in any event became eighteen October 7, 1991. Thus, the custody status of each child subject to custody may have changed between August 25, 1989, and June 7, 1993.

Using Rule 90.3(a) to calculate support for this entire period would be appropriate only if Long had sole or primary custody of all children subject to custody during the entire period. (The rate under that rule should have changed nonetheless once Virginia was no longer subject to a custody order.) If the custody status of any or all of the children changed for an interim period, the analysis for that period also should have changed. The most accurate way to calculate support

---

**11.** It appears that the parties' disputes about the precise amount of custody and visitation actually exercised may have been motivated by a desire to alter the amount of child support. Denying visitation will not decrease the child support payments. The parties should recognize that be-

cause the financial payments are fixed, the parties can be flexible in scheduling visitation around their children's and their own varying schedules without affecting the amount of child support they will receive or pay.

in such situations is to calculate it for each interim period, looking at each interim period in isolation. It is possible that Rule 90.3(a) will apply to one period, that Rule 90.3(b) will apply to another, and that some other analysis may apply to yet another.

Turinsky argues that she was awarded visitation exceeding 30% for all four children during this period. We cannot say with any assurance precisely what custody was awarded for each child during all relevant times, including the interim periods. This is so in part because the order effective August 25, 1989 did not set out a comprehensive visitation schedule and because no subsequent order clarified that order. It is also unclear whether the record contains all orders affecting custody. We are also unsure of the intended duration of Christmas and spring vacation visitation and cannot determine the effect of alternating these vacations. *Long*, 816 P.2d at 157–58 n. 11. Furthermore, we cannot say whether the increase in Turinsky's visitation rights for the two boys resulting from the June 25, 1990 and October 1, 1992 orders was sufficient to give Turinsky custody of the boys for at least 30% of the year, and thus shared physical custody. The appellate record seems to suggest strongly that, notwithstanding the ambiguity in the August 25, 1989 order, Long had primary custody of both girls. The record is less clear regarding custody of the boys at all times. We cannot say what percentage of the boys' custody was awarded to each parent. We consequently cannot determine whether the orders gave the parties shared custody of the boys, and if so, for what period.

The June 25, 1990 order or subsequent orders may have given Turinsky "shared physical custody," as that term was defined by Civil Rule 90.3(f), of some of the children for interim periods. If so, it was inappropriate to rely exclusively on Rule 90.3(a) to calculate the child support due during those periods. Any error in this regard potentially affects the present dispute over child support arrearages.

It is necessary to remand so that the trial court can determine precisely what custody was awarded for each child from August 25, 1989, until the June 7, 1993 decision which resulted in Turinsky's notice of appeal filed July 7, 1993.[12]

Once those facts have been found, the trial court should apply the appropriate method for calculating child support for each interim period. Subject to Civil Rule 90.3(c), the court should calculate child support under Civil Rule 90.3(a) for any period when one parent was awarded sole or primary physical custody of all children subject to a custody order. (Although Rule 90.3(b) would apply to any period when the parents shared physical custody of all the children, it does not appear that condition existed at any time pertinent.)

It is possible that for some interim period the court's orders (1) did not give either Long or Turinsky sole or primary physical custody of all unemancipated children, and (2) did not give Long and Turinsky "shared physical custody" of all unemancipated children. Thus, it is possible that for some interim period which we cannot determine from the record Long had sole or primary custody of Rebecca (and Virginia before she reached majority) and Turinsky and Long shared physical custody of the two boys. If so, this would be a hybrid situation, and neither Civil Rule 90.3(a) nor Civil Rule 90.3(b) would exclusively determine the support required for all the children. In such a situation, a trial court should, subject to Rule 90.3(c), rely on both Rule 90.3(a) and Rule 90.3(b) to calculate child support. The court should apply Rule 90.3(a) for children in one parent's sole or primary custody and Rule 90.3(b) for children whose custody is shared,

---

**12.** In the case of the August 25, 1989 order this task requires added explanation. We reversed the visitation order of August 25, 1989, as "unacceptably ambiguous." *Long*, 816 P.2d at 158. The question of how to calculate child support based on an invalid visitation order is a difficult one. We suggest that the visitation order must be modified retroactively in a manner which both complies with the prior mandate of this court and deviates from the 1989 order in the least possible way. Under the circumstances of this case, this could be accomplished by striking the reference to visitation for seventy-two hours out of any ten-day period in case Turinsky moves from Anchorage, *id.* at 157, assuming that Turinsky did not move.

and then offset or add the results to determine the net obligation for that period.[13]

The trial court may have followed the "divided custody" model described in Civil Rule 90.3 commentary V C. That commentary states that divided custody exists when "at any one time one parent may have physical custody of one child and the other may have physical custody of the other children." Alaska R.Civ.P. 90.3 commentary V C. The commentary explains that these situations require a different analysis:

> The first step in determining support in such a divided custody arrangement is to apply the usual shared custody formula by averaging the time all children will spend with each parent. For example, if one child will live with the father all of the time and two with the mother, support is calculated as if all the children spent one-third of the time with the father. The appropriate percentage figure for all the children (in the example, 3 or 33%) then is applied.

> The second step in determining divided custody support is for the court to carefully consider whether the support amount should be varied under paragraph (c)(1)(A). *A divided custody case should be treated as an unusual circumstance under which support will be varied if such a variation is "just and proper...."*

Alaska R.Civ.P. 90.3 commentary V C (emphasis added). The trial court appeared to have calculated support by averaging the

custody of Rebecca and the two boys for the entire period in dispute.

The commentary indicates that the "divided custody" situation was intended to address the inefficiencies which result when the children live in different households. "Such an arrangement, depending on the circumstances, may require greater expenditures to support the children because it is somewhat less expensive to support children living together than in two households at the same time." Commentary V C.

There was no "divided custody" as that term was used in the commentary, because the record does not suggest and Turinsky does not argue that one parent had sole or primary physical custody of fewer than all the children at a time the other parent had sole or primary physical custody of the other children. The custody situations which may have existed did not involve the degree of inherently uneconomic arrangements contemplated by the commentary.

This reading of the commentary is confirmed by the definition of "divided custody" recently added to Rule 90.3(f). *See* Rule 90.3(f)(3) (effective July 15, 1995).[14] That definition contemplates situations in which the parents split the sole or primary custody of the children. It does not state or imply that it applies if any children are subject to shared physical custody. The commentary quoted above predated the definition. The commentary was renumbered but did not

---

**13.** Applying this method, the court would use Rule 90.3(a) to calculate the support Turinsky was obliged to pay Long because Long had primary physical custody of Rebecca (and Virginia when appropriate). The court would then use Civil Rule 90.3(b) to determine which parent was obliged to pay support for the two boys during any period when they were subject to an order awarding shared physical custody to the parents. The results of those two calculations would then be merged to determine what support was payable and by whom. If, for example, Turinsky's support obligation for Rebecca under Civil Rule 90.3(a) exceeded the amount of any net monthly support Long was to pay under Rule 90.3(b) for the two boys, Turinsky would have a net obligation to Long. The calculations under Civil Rule 90.3(b) must, of course, employ the 1.5 multiplier per Civil Rule 90.3(b)(3).

For this hybrid situation, the court should prorate the per child support percentages specified in Rule 90.3(a)(2). Thus, assuming that four

children are subject to custody orders, and that Long has primary custody of the two girls, and that Long and Turinsky share custody of the two boys, the court would first calculate under Rule 90.3(a) what Turinsky owed Long for support for the girls. That calculation would multiply Turinsky's income by 9% per child in Long's sole or primary custody. The 9% figure is derived from the 36% total for four children, prorated among the four. The court would then apply Rule 90.3(b) for the children in shared custody, again using the same prorated support figure per child.

**14.** Civil Rule 90.3(f)(3) (effective July 15, 1995) provides:

(3) **Divided Custody.** Parents have divided custody under this rule if one parent has sole or primary physical custody of one or more children of the relationship and the other parent has sole or primary custody of one or more other children of the relationship.

change substantively when the definition was added to the rule.

The trial court may have averaged the custody for all the children to calculate child support in reliance on the method suggested for divided custody situations. That method has no bearing in this case, where there is neither split physical custody, nor the same degree of economic inefficiency typified by split custody. Moreover, the averaging method is inconsistent with the method which we have discussed above as the preferred way to calculate support in situations like the one presented here.

In this case, the court erred if it applied only Rule 90.3(a) to calculate support for any interim period when the parents shared physical custody of any of the children.[15] Rule 90.3(a) covers "the usual custodial situation in which one parent will have physical custody of the child ... for over seventy percent of the year." Alaska R.Civ.P. 90.3 commentary IV A. Only if the three minor children properly could be considered as one group would it have been correct to conclude in the June 7, 1993 order that Turinsky had custody of the minor children for less than 30% of the time. The children could not be considered to be one group if Long had primary custody of Rebecca and Turinsky shared custody of the boys. To consider the three children as a single unit in that situation would ignore the increased costs associated with the shared custody of the two boys.[16] Long had primary custody of Rebecca, but he and Turinsky may have shared custody of the two boys at various times.[17] If so, it would have been error to treat the three children as a single group and to apply Rule 90.3(a). Likewise, the court could not average the children's custody for the entire period in dispute if interim custody orders affected visitation and altered the status of a particular child.

On remand, the trial court has the discretion to create a child support order that considers the special circumstances of this case. That order should be made nunc pro tunc to August 25, 1989, the date the original child support order was entered. The calculation must be based on the custody actually ordered, not exercised, must be calculated for each period during which interim orders affected custody, and must take into account all children subject to custody orders.

15. We note that the trial court in the subsequent child support order of October 26, 1993, did not apply Rule 90.3(a). In fact, much of Turinsky's argument is based on a comparison of the June 7, 1993 order and the order issued on October 26, 1993. The October 1993 order calculated child support under Rule 90.3(b). It concluded,

The court has not ordered a change in custody of the 3 children since Judge Reese's order of June 7, 1993. The order affirmed custody of the two boys with the mother 32% of the time. The court held that Mrs. Turinsky held custody of Rebecca for a smaller portion of the time. Mr. Long therefore has custody of the children for a $^{166}\!/_{300}$ share of time $(68+68+30)$, and Ms. Turinsky retains custody for a $^{134}\!/_{300}$ share. $(32+32+70)$.

Although the October 26, 1993 order is not before us, we note that the trial court's application of Rule 90.3(b) is not entirely correct. As of August 30, 1993, when the trial court gave sole legal and physical custody of Rebecca to Turinsky, Long received "reasonable visitation." Nevertheless, the trial court credited him with custody for 30% of the year when it calculated child support. Because the custody order contained both specific and indefinite elements, where the specific element did not give Long custody of Rebecca for 30% of the year, the court could not properly rely on the indefinite element to arrive at that figure. See Charlesworth v. State, Child Support Enforcement Div., 779 P.2d 792, 794–95 (Alaska 1989). In addition, it does not appear that the court employed the 1.5 multiplier as required by Rule 90.3(b)(3). Since the October 26, 1993 order has not been appealed we do not express an opinion about its validity. We note, however, that pursuant to Rule 90.3(c), the court might permissibly enter such an order if it were supported by sufficient findings.

16. The commentary to Rule 90.3 explains that a shared custody situation is more costly than a primary custody situation because some common living expenses are duplicated. Alaska R.Civ.P. 90.3 commentary V B.

17. Per the June 12, 1992 order Turinsky had visitation with Rebecca for at least one Sunday per month and additional reasonable times. This "reasonable visitation" order does not specify in writing an amount of visitation; therefore Long had "primary" custody of Rebecca. Charlesworth, 779 P.2d at 794–95. The oral October 1992 order may have given Turinsky shared custody of the two boys because they resided with her for more than 30% of the year. Alaska R.Civ.P. 90.3(f).

## C. *The Ex Parte Communications*

Turinsky argues that the trial court erred in considering ex parte communications made to the court in Long's behalf. These communications were letters from Long and his wife, an affidavit from Long's former attorney, and unsigned letters allegedly written by the parties' son, Gregory. These letters were addressed to the judge as "an inquiry and of an informative nature." Copies were not sent to Turinsky. Although the record does not suggest that the trial court gave substantive consideration to these improper communications, neither does the record affirmatively reflect that the court informed Turinsky of them, or that it informed the parties the court would not consider such communications in deciding issues before it. Likewise, the record does not reflect that the court advised Long that such communications are improper.

The parties have filed volumes of paper in this litigation and we recognize the difficulty trial courts have in monitoring service on opposing parties. Nevertheless, ex parte communications raise the possible appearance of impropriety that the justice system must avoid.[18] Therefore, on remand, the trial court should follow the requirements set out in *Bowlin v. State,* 643 P.2d 1 (Alaska App.1982). In that case, the court of appeals required judges to disclose ex parte communications before rendering any decision that could have been affected by the communication. *Id.* at 2. Alternatively, the court may clearly state in the record that the communications were not considered in its decision. *Id.* at 5. On remand, the trial court should give Turinsky an opportunity to respond to the documents or it should state that it has not relied on them in its decision.

## IV. *CONCLUSION*

For the above reasons, we VACATE the June 7, 1993 child support order. We REMAND for entry of a precise child support order, for determination of the custody status of each child at each pertinent time between August 25, 1989, and June 7, 1993, for entry of an order calculating any child support arrearages, and for further proceedings consistent with our discussion of the ex parte communications. We retain jurisdiction of this case.

---

18. We note that the attorney or former attorney for a party could not ethically provide an affidavit with the knowledge or expectation it would be used as part of an ex parte communication with the trial court. Alaska R.Prof.Conduct 3.5(b).