**Robert Jay ROWEN, Appellant,**

v.

**Sandra Kaler ROWEN, Appellee.**

**No. S–7311.**

Supreme Court of Alaska.

July 31, 1998.

Robert Jay Rowen, pro se, Anchorage.

John B. Patterson, Kelly & Patterson, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

**OPINION**

BRYNER, Justice.

Robert Jay Rowen appeals from superior court orders modifying his child support, refusing to exercise jurisdiction over a daughter residing in California, and awarding partial attorney's fees incurred by his former wife, Sandra Kaler Rowen, in enforcing the parties' custody agreement. We affirm all of the disputed orders except one requiring Robert to pay all transportation costs for visitation.

## I. FACTS AND PROCEEDINGS

### A. The Original Child Custody and Support Agreement

Robert Jay Rowen (Robert) and Sandra Kaler Rowen (Sandra) were married in 1976 and divorced in 1984. Their divorce decree incorporated a child custody and support agreement, executed in December 1983, that provided for the care of their three children, Ian Gabriel (born November 10, 1979) and twins Jamie Rebecca and Tami Serene (born November 4, 1981).

Under the custody agreement, Robert and Sandra exercised "shared or joint" custody of the children. Sandra, who had moved to Los Angeles, was to be the "principal or 'school' custodian," having physical custody during the school year; Robert was to have two months of visitation each summer, two weeks over Christmas, and spring visitation as school schedules permitted.

According to the custody agreement, this arrangement was to remain intact until each child reached fourteen years of age. After that, the child's preference would determine the school-year parent. Robert undertook to pay all transportation costs incidental to visitation unless a child, after turning fourteen, elected to live with him. Travel costs for that child would then shift to Sandra.

Robert further agreed to pay Sandra $1500 per month in child support except during summer visitation. The custody agreement contained no express provision for adjustment of the child support payment in the event that one or more children elected to

change school-year custody after turning fourteen.

### B. Modification of Child Support Resulting from Ian's Election to Change School–Year Custody

In the summer of 1994, fourteen-year-old Ian elected to live in Alaska with Robert during the school year. Robert moved to modify child support, requesting an "adjustment for divided custody and/or visitation credit" pursuant to Alaska Civil Rule 90.3(b) and (a)(3). Although Robert's motion asked that Sandra be ordered to file a child support affidavit disclosing her annual income, Robert declined to submit any information concerning his own income. Claiming that he could not be compelled to reveal his financial circumstances because of an ongoing IRS investigation, Robert offered instead to have his child support calculated on the basis of the $60,000 annual income cap specified in the then-existing version of Rule 90.3(c)(2).

On May 23, 1995, after receiving a child support affidavit and supporting documentation from Sandra, the superior court entered an order reducing Robert's monthly support payment from $1500 to $1391.61. To arrive at this figure, the court employed the formula for shared physical custody set out in Rule 90.3(b), taking Robert's annual income to be $60,000, as Robert had requested. However, in light of Robert's failure to disclose his actual income, the court declined to reallocate any visitation costs to Sandra. The court directed Robert to continue paying "the full transportation costs for visitation between [all of] the children and both parents."

Robert moved for reconsideration, challenging several aspects of the methodology used by the court in calculating the modified support obligation. Robert also argued that the court's failure to make Sandra pay the transportation costs for her visitation with Ian violated the terms of the original custody agreement, which called for an automatic shift in visitation costs upon any child's election to change school-year custody. Except for the correction of a computational error, which resulted in a modified monthly child support payment of $1275.64, the superior

court denied reconsideration in June 1995. Robert filed notice of appeal.

### C. Proceedings for Enforcement of Agreement to Direct Tami's Return to Los Angeles

In July 1995, while twins Tami and Jamie were with Robert for summer visitation, Robert informed Sandra that Tami wished to remain in Alaska for the upcoming school year. Tami was still thirteen years old and thus was not yet entitled to choose her own school-year residence. Because Sandra did not think the proposed change would be in Tami's best interests, Sandra refused to agree to a change in Tami's school-year custody.

The twins arrived in Los Angeles at the end of the summer on schedule. Before Tami left for California, however, she and Robert evidently made plans for her to return to Anchorage for the school year. Not long after arriving in Los Angeles, Tami flew back to Anchorage without telling her mother, using a ticket purchased for her by Robert. She began school in Anchorage on September 5, 1995.

On September 6, Sandra filed a motion with the superior court in Anchorage to enforce the original custody agreement. The motion implicitly sought Tami's immediate return to California. In response to Sandra's motion, Robert claimed that he was in compliance with the custody agreement and that Tami's decision to live in Alaska was consistent with her best interests. The superior court granted Sandra's motion, ordering Robert to return Tami to Sandra's custody in California within seventy-two hours. The court declined Robert's request for a hearing to inquire into Tami's best interests, noting that, if Robert wished to modify custody, he should attempt to do so in California.

Sandra later moved for an award of $4240 in attorney's fees that she had incurred in securing Tami's return to Los Angeles. After considering the parties' relative financial resources and expressly finding that Robert had acted in bad faith, the superior court awarded Sandra $2500 in partial attorney's fees.

Robert appealed the court's orders returning Tami to Los Angeles and awarding Sandra attorney's fees. His new appeal was consolidated with his earlier appeal challenging the modified child support order.

## II. DISCUSSION

### A. Did the Court Err in Its Order Modifying Child Support?

Robert challenges the modified child support order on numerous grounds.

#### 1. Was there a material change in circumstances warranting modification?

Robert argues that the superior court could not modify the 1983 custody agreement without first making findings of fact and conclusions of law setting out "the exceptional circumstances relied upon by the court to change the existing order."

■ A showing of changed circumstances is necessary to justify modification of a child support order. See Alaska R. Civ. P. 90.3(h)(1). In the present case, the parties entered into their custody agreement well before this court adopted Alaska Civil Rule 90.3. See Alaska Supreme Court Order No. 833 (April 30, 1987). Since adopting Rule 90.3, we have held that the rule itself constitutes a material change in circumstances warranting modification of child support obligations established prior to its effective date. See Charlesworth v. State, Child Support Enforcement Div., 779 P.2d 792, 793–94 (Alaska 1989).

Moreover, it was Robert himself who moved to modify the original child support agreement. As a result of Ian's decision to change school-year custody, Robert expressly requested the court to recalculate support, pursuant to Rule 90.3. The terms of Robert and Sandra's custody agreement did not specify any other method for recalculating support in the event of a change in school-year custody.

Given these facts, an adequate showing of changed circumstances obviously supported the trial court's decision to modify child support in accordance with Rule 90.3. See id.; see also Perry v. Newkirk, 871 P.2d 1150, 1155 (Alaska 1994); Richmond v. Richmond, 779 P.2d 1211, 1217 (Alaska 1989); Arndt v. Arndt, 777 P.2d 668, 670 (Alaska 1989).

#### 2. Did the court err in determining the parties' incomes?

Robert contends that Sandra submitted insufficient evidence of her financial status and miscalculated her income and expenses. He also claims that Sandra improperly deducted expenses from her income without documentation.

In calculating the modified support obligation, however, the superior court appears to have relied on Robert's own estimate of Sandra's net income. The basis for the superior court's determination of net income is adequately explained in the record. See Wright v. Gregorio, 855 P.2d 772, 773 (Alaska 1993). We thus find no abuse of discretion in the determination of Sandra's net income. See Coghill v. Coghill, 836 P.2d 921, 926 (Alaska 1992).

#### 3. Did the court err in calculating Robert's modified child support payment?

Robert claims that the trial court made three errors in calculating his modified child support: it improperly estimated the amount of time the children would actually spend with each parent; improperly used the 1.5 multiplier found in Rule 90.3(b)(3); and failed to afford him a visitation credit due under Rule 90.3(a)(3). These claims are meritless.

##### a. Percentage of time spent with each parent

The trial court estimated that Sandra's combined percentage of time with all children will total 67% annually, while Robert's will total 33%. Robert claims that this estimate is inaccurate, in part because of an alleged "factual dispute as to the exact amount of time Ian Rowen will be spending with his mother," and in part because Robert predicts that the children will spend a combined total of at least 40% of their time each year with him.

■ This argument assumes that Robert's child support payments must be based on predictions of actual time the children will spend with each parent. Robert's assumption is mistaken, as this court has held that the percentage of time each parent has custody must be determined by reference to the child custody order, not the parties' actual conduct. *See Turinsky v. Long,* 910 P.2d 590, 595 (Alaska 1996).

Here, the custody agreement contains identical custody and visitation provisions for all of the children and makes these provisions subject to modification by mutual agreement. Absent evidence of a mutual accord to modify the original visitation provisions, the ratio of school-year custody to visitation remained fixed by the custody agreement, despite Ian's election to change school-year custody to Robert. The trial court thus correctly relied on the original agreement in concluding that Ian's recent move to Alaska would result in Sandra having physical custody of all three children for 67% of each year. The court did not err in adopting this ratio in its child support computation.

### b. *Use of the 1.5 multiplier*

The superior court calculated Robert's modified child support payments by the method prescribed in Rule 90.3(b) for situations involving shared physical custody. In accordance with Rule 90.3(b)(3), the court used a 1.5 multiplier to arrive at the final support amount.[1] Robert challenges the use of the 1.5 multiplier, claiming that its use requires him to pay child support "in excess of the cap provided in rule 90.3, and in excess of what [he] would have to pay for two children under sole custody calculations." He argues that divided custody presents "special. circumstances" that require a variance from the provisions of the shared physical custody rule.

■ Robert is correct in observing that this case presents a situation of divided custody rather than shared physical custody. *See* Alaska R. Civ. P. 90.3(f)(1), (3); *Bunn v. House,* 934 P.2d 753, 755–56 (Alaska 1997). In divided custody cases, Rule 90.3(b)'s shared physical custody formula is a permissible method for determining support. But this formula is applied flexibly and is not the only permissible method of calculation.[2] *See Bunn,* 934 P.2d at 755–56; *cf. Turinsky,* 910 P.2d at 596–97; *Coats v. Finn,* 779 P.2d 775, 776 (Alaska 1989). The conclusory claims of unfairness that Robert advances on appeal do not persuade us that the superior court abused its discretion in establishing the child support award according to Rule 90.3(b).[3]

1. Under Rule 90.3(b), the calculation of child support in a shared custody situation entails a multi-step process. The court begins by calculating the amount each parent would pay under Rule 90.3(a) "assuming the other parent had primary custody." Alaska R. Civ. P. 90.3(b)(1). The court then "[m]ultipl[ies] this amount for each parent by the percentage of time the other parent will have physical custody of the children" in the shared custody arrangement. *Id.* R. 90.3(b)(2). Next, the court makes discretionary adjustments to the amount for each parent as necessary to reflect "the ratio of funds each parent will directly spend on supporting the children." *Id.* The parent with the larger amount becomes the obligor. *See id.* R. 90.3(b)(3). To compute the actual amount of the obligor's payment, the court subtracts the smaller amount from the larger and multiplies the difference by 1.5. *See id.* The resulting figure represents the annual support award unless it exceeds the amount the obligor would pay under Rule 90.3(a) if the other parent had sole or primary custody of the children; in that event, support is calculated under the formula for sole or primary custody. *See id.* The annual support award is then divid-

ed into "equal installments [to be paid] over those months in which the obligor parent does not have physical custody" for periods of 30 consecutive days or more. *Id.* R. 90.3(b)(4).

2. The commentary to Rule 90.3 notes that the shared physical custody formula set out in Rule 90.3(b) "was developed primarily for the situations in which the parents share custody of their only child, or ... of several children, but the children stay together." Alaska R. Civ. P. 90.3, Commentary VI.B.3. According to the commentary, divided custody situations, where each parent has custody of one or more of the children, "may require greater expenditures ... because it is somewhat less expensive to support children living together than in two households at the same time." *Id.* Thus, the commentary recommends that the shared custody formula of Rule 90.3(b) be used as a "first step in determining support," the second step being careful consideration of whether a variation under Rule 90.3(c)(1)(A) "is 'just and proper[.]' " *Id.*

3. Robert claims that Ian's relocation forced him to move from a small apartment into a larger

*See Coghill,* 836 P.2d at 924–25; *Smith v. Smith,* 673 P.2d 282, 283 (Alaska 1983).

### c. *Visitation credit*

Robert claims that the court erred in failing to consider whether to grant him a visitation credit under Rule 90.3(a)(3).[4] However, his conclusory discussion of this point fails to recognize that the visitation credit applies to child support awards under Rule 90.3(a), which deals with sole or primary custody situations. Awards in shared physical custody or divided custody situations are addressed in Rule 90.3(b) and in Part VI.B.3 of the commentary to Rule 90.3, respectively. Because formulas for calculating support in shared and divided custody situations already factor in the percentage of time each parent will have physical custody of the children, *see, e.g.,* Alaska R. Civ. P. 90.3(b)(2), it is not at all clear that Rule 90.3(a)(3)'s visitation credit should extend to such cases.

Moreover, at the trial court level, Robert referred to the visitation credit only once, in his motion to modify child support; there, he gave it only passing mention, asserting his general willingness to pay appropriate support "for the two children still residing with [Sandra], with an adjustment for divided custody and/or visitation credit, made pursuant to 90.3(b) and 90.3(a)(3)." He did not mention the credit in his memorandum in support of his modification motion, in his response to Sandra's financial information, in his memorandum regarding calculation of child support, in his suggested support calculation, or in his motion for reconsideration of the child support order.

"It is well established that matters not raised at trial will not be considered on appeal." *Doyle v. Doyle,* 815 P.2d 366, 372 (Alaska 1991) (quoting *Brooks v. Brooks,* 733 P.2d 1044, 1053 (Alaska 1987)). To the extent that the visitation credit might conceivably apply in a divided custody case, Robert has failed to preserve the issue.

### 4. *Did the court improperly impose on Robert the entire cost of transportation for visitation?*

The original custody and support agreement provided that Robert would pay all transportation costs for visitation "unless the children after age 14 reside with Father, in which case Mother will pay transportation costs." Despite this provision, when the superior court modified the child support award to account for Ian's decision to live with Robert, the court left Robert with the costs of transportation for all of the children. The court explained that it "decline[d] to reallocate the visitation costs without full disclosure of [Robert's] income. [Robert] will not be rewarded by his refusal to divulge his income information."

Robert challenges the superior court's imposition of full transportation costs for visitation. He contends that transportation costs "should not be used by the court as a sanction against a non-custodial parent," and characterizes the order as "clear and convincing evidence" that the court sought to punish him for its own misunderstanding of Rule 90.3(c)(2). Robert contends that, because he agreed to have his support obli-

home and that the cost of providing for a child in Anchorage is dramatically higher than in Los Angeles. Neither the record nor Robert's briefing supports these assertions. Moreover, the added expense to Robert is at least partially taken into account in the reduction of his support payment from $1500 to $1275 per month. While the new payment is only marginally lower than the payment Robert would make if he received no support for Ian and paid support for the twins under the primary custody formula of Rule 90.3(a), it does not necessarily follow that the new support award is unfair to Robert. Although Ian's move to Anchorage has undoubtedly increased Robert's expenses, it is not clear that Sandra will experience a corresponding decrease in her own financial burden. *See* Alaska R. Civ. P. 90.3, Commentary VI.B.3 ("[A divided custo-

dy] arrangement, depending on the circumstances, may require greater expenditures [than even a shared custody arrangement] to support the children because it is somewhat less expensive to support children living together than in two households at the same time."). Robert's argument simply assumes that he should be made whole for taking on school-year custody of Ian, with Sandra bearing the full burden of any financial inefficiency inherent in the divided custody arrangement.

4. Under this provision, a court may allow the noncustodial parent in a sole or primary custodial situation to reduce support payments up to 50% "for any period in which that parent has extended visitation of over 27 consecutive days."

gation calculated using an annual income of $60,000—the maximum annual income then provided for under Rule 90.3(c)(2)—his actual financial information was "largely irrelevant to the decision in this case."

■ Robert's objection has merit. In a case like the present one, where a custody agreement specifies how visitation costs should be allocated, the parties should ordinarily be held to their original agreement. See *Karpuleon v. Karpuleon,* 881 P.2d 318, 321 (Alaska 1994). Here, the custody and support agreement specified that if a child elected to live with Robert after reaching age fourteen, Sandra would pay that child's transportation costs. Because transportation costs were expressly covered in the agreement, Robert's failure to disclose financial information and his insistence that the court rely on the Rule 90.3(c)(2) income cap were not relevant to this issue. We conclude that the court abused its discretion in altering a provision of the parties' custody agreement that was unrelated to and unaffected by Robert's noncompliant conduct.

### 5. *Did the court improperly make the support order retroactive?*

The trial court's final order establishing Robert's modified support obligation was issued on June 7, 1995, and made the modified child support award "effective commencing January 1, 1995." Robert challenges the June 7 order as an impermissible retroactive modification.

■ Rule 90.3(h)(2) prohibits the retroactive modification of child support.[5] However, an order made effective as of the date that a motion for modification was served is not retroactive. *See id.; Epperson,* 835 P.2d at 453. Robert filed his motion for modification of child support on August 23, 1994. The trial court evidently concluded that San-

dra actually received notice by mail in December 1994. Robert does not dispute this conclusion. Because it is undisputed that Sandra was served before January 1, 1995, the court's order making the modified award effective on that date did not constitute a retroactive modification of support. *See id.*

### B. *Did the Court Err in Ordering Tami's Return to California Without Determining Whether a Move to Alaska Would Be in Her Best Interests?*

■ On September 6, 1995, Sandra, seeking to secure Tami's return to California, moved for an order enforcing the original custody agreement. In opposing the order, Robert claimed that a move to Alaska would be in Tami's best interests. The superior court granted Sandra's motion and ordered Tami's immediate return to California. In so doing, the court stated that it would decline to exercise continuing jurisdiction over Tami's custody and visitation. Robert appeals this order.[6]

■ Robert first contends that the court erred in failing to inquire into and make findings regarding Tami's best interests. In advancing this argument, however, Robert mischaracterizes the trial court's ruling as one deciding a motion by Robert "to modify a custody decree." Robert filed no such motion. Rather, after Robert violated the original custody agreement, Sandra moved for enforcement of its terms. Robert's resistance to Sandra's enforcement efforts did not take the form of a motion to modify custody and thus provided no occasion to relitigate the issue of Tami's best interests.

Robert next contends that the trial court erred in indicating that it would "decline[ ] to exercise custody and visitation jurisdiction of his daughters" and in finding "that California is the home state of these children and the

---

**5.** Rule 90.3(h)(2) provides, "Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d). A modification which is effective on or after the date that a motion for modification ... is served on the opposing party is not considered a retroactive modification." This provision applies to both increases and decreases in child support. *See Boone v. Gipson,* 920 P.2d 746, 749 (Alaska 1996).

**6.** This court will overturn a trial court's custody determination only when there is a showing that the court's findings of fact were clearly erroneous, or that the court abused its discretion. *See Howlett v. Howlett,* 890 P.2d 1125, 1126 (Alaska 1995) (citing *Holl v. Holl,* 815 P.2d 379, 380 (Alaska 1991)).

state in which such litigation should take place." This point is now moot. Sandra's motion for enforcement of the original custody agreement was the only controversy properly before the court when the court issued its order requiring Tami's return to Los Angeles. The court correctly found that Robert had violated the terms of the agreement, and it properly ordered Tami's immediate return to California. This ruling left the court with nothing more to decide.

Any view that the court expressed as to its jurisdiction over future controversies must be regarded as advisory in nature. Robert's attempt to test the court's jurisdictional stance must await the emergence of an actual dispute calling for an exercise of the superior court's jurisdiction to modify custody. If and when the parties bring such a dispute before an Alaska court, that court can decide the issue of jurisdiction on the facts then existing. At this juncture, we need not anticipate and resolve potential jurisdictional disputes.

C. *Did the Court Err in Awarding Sandra $2500 in Attorney's Fees?*

Robert directs his final challenge against the superior court's decision to award $2500 as partial attorney's fees incurred by Sandra in enforcing the court's "existing custody order ... and in resisting [Robert's] attempt to circumvent the Order of this Court requiring compliance with the Custody Order."

In awarding Sandra attorney's fees, the superior court was required to "consider the relative financial resources of the parties and whether the parties ... acted in good faith." AS 25.20.115; *see also S.L. v. J.H.*, 883 P.2d 984, 985 (Alaska 1994).

The superior court's factual findings on the issues of good faith and relative finances are subject to reversal if clearly erroneous; its ultimate decision on an attorney's fee award is reviewed for abuse of discretion. *See Nelson v. Jones*, 781 P.2d 964, 971 (Alaska 1989). The superior court found that Robert had acted in bad faith "in unilaterally abrogating the existing custody order; in deceiving the custodial parent ...; and in making the child, Tami, an unknowing participant in his scheme to abrogate the existing custody order." [7] In its order addressing Robert's motion for reconsideration, the court also compared Robert's and Sandra's financial resources and found that Robert's income was at least three times Sandra's.[8] It appears that Robert filed no opposition to Sandra's motion for fees in the superior court. Considering these circumstances, we find no clear error in the court's findings and no abuse of discretion in its award of fees.

### III. CONCLUSION

The superior court's allocation of all transportation costs to Robert is REVERSED. The superior court's orders modifying child support, requiring Robert to return Tami to California, and awarding attorney's fees to Sandra are AFFIRMED.

---

7. On reconsideration, the court further explained:

> [Robert] apparently formulated the idea that he wanted his daughter to reside with him early in the summer. Rather than bringing an action early, however, he waited until a few days before the child was scheduled to return under the 1983 court order, and then informed [Sandra] that he would not return the child, forcing her to hire an attorney in Alaska to file a motion to enforce the court order. His disobedience of the court order, without first seeking a modification, is not good faith. [Robert], then, having been ordered to obey the court's order, filed an appeal and again refused the court orders. These actions were not done in good faith.

8. The court assumed that Robert's income was approximately $60,000—the income cap then specified in Rule 90.3(c)(2). The court accepted Sandra's claim that her income was $21,570 even though it had earlier based its calculation of Robert's support payments on an income for Sandra of $28,107. The court's choice of the lower income for purposes of the attorney's fee award is inconsequential, however, because either income for Sandra is less than half the income attributed to Robert; both figures are small in comparison to Robert's income.