Rita C. BENNETT, Appellant,

v.

Albert B. BENNETT and State of Alaska,
Department of Revenue, Child Support
Enforcement Division, Appellees.

No. S–8959.

Supreme Court of Alaska.

July 28, 2000.

Tara N. Logsdon, Tull & Associates, Palmer, for Appellant.

Lynn E. Levengood, Downes, MacDonald & Levengood, P.C., Fairbanks, for Appellee Albert Bennett.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska, Department of Revenue, Child Support Enforcement Division.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Chief Justice.

I. *INTRODUCTION*

Rita Bennett appeals the superior court's denial of her child support reimbursement claim for the year she had de facto custody of her son, but her ex-husband, Albert Bennett, was designated as custodian in a court order. Because child support orders should follow custody orders under the rule articulated in *Turinsky v. Long,*[1] we affirm the denial of Rita's reimbursement claim. However, we reverse the superior court's retroactive award of child support to Albert for this same time period.

II. *FACTS AND PROCEDURAL HISTORY*

Rita and Albert Bennett were divorced by a decree of dissolution on May 24, 1985. The decree granted Rita primary physical custody of the two minor children[2] and granted Albert reasonable visitation rights. Albert was required to pay $250 per month, per child, as child support. Albert's child support obligation was later changed to a single sum of $788 per month, effective May 16, 1990.

Eleven years after the divorce, thirteen-year-old Alec expressed an interest in living with his father. Albert filed a motion to modify physical custody and child support, and Rita filed a pro se response, agreeing to the change in custody but requesting that Alec "be allowed to live with his father, Mr. Bennett, in Mississippi for one year before making a decision regarding physical custody."

On September 17, 1996, the superior court granted Albert's motion to modify custody and child support. The order stated that "because the mother consents to the child living with the father, at least for one year IT IS HEREBY ORDERED that the motion is granted." At the end of the order, the judge handwrote the following:

> This order is subject to review upon a motion by Rita Bennett within one year of the date of this order. The court retains jurisdiction over this matter for one year after the date of this order notwithstanding the child's residence in Mississippi.

The order also stated that "child support shall be ordered pursuant to Civil Rule 90.3 effective the date the motion was filed [July 1996]." Despite this provision, the court did not issue a child support order.

On September 30, 1996, Albert applied to CSED to collect child support from Rita. But, because there was no child support order in place, CSED did nothing to collect the child support until August 1998, when it filed a motion requesting that the court establish a child support order.

In the meantime, Albert's custody of Alec was not successful. In late July 1997 Alec moved back to Alaska to live full time with his mother. He has lived with her ever since.

1. 910 P.2d 590, 595 (Alaska 1996).

2. The second child turned eighteen in 1996 before the events leading to this lawsuit took place. Her custody and child support are not at issue in this appeal.

Despite regaining de facto physical custody of Alec in July 1997, Rita did not move to modify the September 17, 1996 custody order until a year later, on July 8, 1998. In her motion, she requested custody and child support from August 1, 1997. Albert opposed her motion. The court granted part of her motion, awarding her primary physical custody of Alec but requiring Albert to pay child support only from the date of her motion, July 1998.

A few days later, CSED filed a motion to establish Rita's child support obligations for August 1996 through July 1998, the two years that Albert had de jure custody.[3] Rita opposed CSED's motion insofar as it required her to pay child support to Albert during the year that she had de facto physical custody of Alec but Albert had de jure physical custody. She also filed a cross-motion for reimbursement of her child care costs for that year.

The superior court denied Rita's request for reimbursement, holding that "under *Turinsky v. Long*,[4] the court cannot order Albert Bennett to pay child support retroactively during a period of time when he was identified as the custodial parent in an existing child custody order." The court later ruled that Rita owed Albert child support for the entire two years that he had de jure custody. The court assessed Rita's child support obligations at $600 per month for August 1996 through December 1996 and

$714 per month for January 1997 through June 1998.

This appeal followed.

## III. *STANDARD OF REVIEW*

 This court will generally not disturb a trial court's decision on a motion for child support unless the trial court abused its discretion.[5] We will set aside a lower court's factual findings only when they are clearly erroneous.[6] Findings are clearly erroneous when, "after reviewing the record as a whole, this court is left with a definite and firm conviction that a mistake has been made." [7]

 However, whether the trial court used the correct method of calculating child support is a matter of law, as is the proper interpretation of a court order.[8] We apply de novo review to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.[9]

## IV. *DISCUSSION*

This appeal presents two separate but interrelated questions: (1) is Rita entitled to child care reimbursement for August 1997 through June 1998, the year when she had de facto physical custody of Alec but Albert had de jure physical custody? and (2) does Rita have to pay child support to Albert for that same time period?

A. *Rita Is Not Entitled to Child Care Reimbursement for the Time That She Had De Facto Physical Custody of Alec But Albert Had De Jure Custody.*

---

3. There is a terminology problem in this case that stems from the fact that "legal custody" has two meanings. In one sense "legal custody" is distinct from court-ordered "physical custody" and refers to the responsibility for making "major decisions affecting the child's welfare." *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991) (internal quotations omitted). "Physical custody" refers to the responsibility for physical care and the immediate supervision of the child. But "legal custody" may also refer to custody under a court order which may, in turn, be either "legal" in the former sense, or physical, or both. In this opinion we use "legal custody" in the former sense. The parties in this case had joint legal custody of their children. We therefore use the terms "de jure" and "de facto" custody to refer to court-ordered and non-court-ordered physical custody statuses.

4. 910 P.2d 590, 595 (Alaska 1996).

5. *See Monette v. Hoff,* 958 P.2d 434, 436 (Alaska 1998).

6. *See Dodson v. Dodson,* 955 P.2d 902, 905 (Alaska 1998).

7. *Marine v. Marine,* 957 P.2d 314, 316 (Alaska 1998) (citation and internal quotations omitted).

8. *See Crayton v. Crayton,* 944 P.2d 487, 489 n. 1 (Alaska 1997); *Charlesworth v. State, Child Support Enforcement Div. ex rel. Charlesworth,* 779 P.2d 792, 793 (Alaska 1989).

9. *See Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

In *Turinsky v. Long*,[10] we held that child support awards should be based on the court-ordered custody or visitation, rather than on the actual custody arrangement. "If the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order."[11] We established this principle to prevent parents from interfering with court-ordered custody and visitation in order to gain an increase in child support payments.[12] We intended as well to encourage parents to either comply with court orders or move to modify them in a timely manner.[13]

Rita concedes that, under *Turinsky*, she cannot collect child care reimbursement for the time that she had de facto custody of Alec but Albert had de jure custody. She argues, however, that Albert ceased to have de jure custody of Alec in September 1997. According to Rita, the September 1996 custody order was a temporary order that naturally expired at the end of one year. CSED agrees that if the custody order was temporary, Rita is entitled to child support reimbursement after the date of its expiration.[14]

Yet there is little evidence to support Rita's claim that the order was temporary. Rita bases her argument for the temporary nature of the order on the judge's handwritten comment that he is granting the motion "because the mother consents to the child living with the father, at least for one year." But this sentence is best understood as an explanation of the court's rationale in granting the change in custody rather than as a limitation on the length of that change. Moreover, the judge's handwritten addition at the end of the order clearly indicates that, barring an affirmative action by Rita to move to modify the order, the change in custody would become permanent: "This order is subject to review *upon a motion by Rita Bennett within one year of the date of this order.*" (Emphasis added.) Therefore, under the terms of the custody order, de jure custody did not revert back to Rita until she moved to modify the order in July 1998.

Because Rita did not have de jure custody of Alec from July 1997 to June 1998, she is barred from collecting child care reimbursement for that time period.[15]

B. *It Was Error to Grant a Retroactive Child Support Award to Albert for the Year He Had De Jure Physical Custody of Alec but Rita Had De Facto Physical Custody.*

Although Rita is barred from receiving child support for the time before she moved for de jure custody, it was nonetheless error for the court to retroactively grant Albert child support for that same time period.

The commentary to Civil Rule 90.3 cautions courts to consider "all relevant factors" when retroactively establishing child support awards for a time period where no order currently exists.[16] Child support awards, by their very definition, are intended to benefit the child, not provide a windfall to a parent.[17] Awarding child support to a parent who has relinquished de facto custody and no longer provides any financial support

---

10. 910 P.2d 590, 595 (Alaska 1996).

11. *Id.; cf. Karpuleon v. Karpuleon*, 881 P.2d 318, 320 (Alaska 1994) (burden is on parents to apply promptly for modification when child changes residency).

12. *See Turinsky*, 910 P.2d at 594–95.

13. *See id.*

14. *See Vachon v. Pugliese*, 931 P.2d 371, 382 (Alaska 1996) (holding that in cases where no custody order exists, child support should be awarded pursuant to Civil Rule 90.3).

15. We are unpersuaded by Rita's other arguments for child support reimbursement. Unlike the parties in *Karpuleon*, 881 P.2d at 321–22, Rita and Albert did not have an agreement that shifted child support obligations when custody shifted. Similarly, unlike the father in *Crayton v. Crayton*, 944 P.2d 487, 488–89 (Alaska 1997), who had both de jure and de facto custody of the children pursuant to interim custody orders, Rita did not have de jure custody of Alec until the court granted her motion to modify the 1996 custody order.

16. Alaska Civil Rule 90.3 Commentary VI.E.

17. *See generally* Civil Rule 90.3.

to the child does not further the purposes of the child support rule.[18]

Here, Albert ceased to provide any financial support for Alec after Alec left his custody in July 1997. Rita provided the sole support for Alec during the time that she had de facto custody. Given that the trial court was aware of these circumstances, it was an abuse of discretion to retroactively award Albert child support for this time period.[19]

## V. CONCLUSION

Child support awards should be based on custody orders. If parents do not follow the custody order, they bear the burden of notifying the court of the change and applying for the appropriate modifications.[20]

Because Rita did not move to modify the custody order until a year after Alec came to live with her, she is barred from receiving child care reimbursement for that year. However, Rita should not have to pay child support to Albert for the time when he no longer had de facto physical custody of Alec and she was providing sole financial support for Alec's welfare.

We therefore AFFIRM the superior court's denial of Rita's reimbursement claim but REVERSE the superior court's retroactive award of child support to Albert for the time that Albert had de jure custody but Rita had de facto custody.

---

18. *See id.* Commentary II ("Integral to [Civil Rule 90.3] is the expectation that the custodial parent will contribute at least the same percentage of income to support the child[ ].").

19. Because no child support order existed, the trial court did not have to concern itself with the prohibition against retroactive modification of child support. *See, e.g., Hendren v. State, Dep't of Revenue, Child Support Enforcement Div.,* 957 P.2d 1350, 1353 (Alaska 1998) (no retroactive modification of child support orders except as allowed by statute). We note, however, that even if a support order had existed, the result might not have differed. Under the recently revised Civil Rule 90.3(h)(3), a de jure custodial parent

may be precluded from collecting arrearages that accrue under an existing child support order if primary physical custody shifts to the other parent for longer than nine months:

> The court may find that a parent and a parent's assignee are precluded from collecting arrearages for support of children that accumulated during a time period exceeding nine months for which the parent agreed or acquiesced to the obligor exercising primary custody of the children. A finding that preclusion is a defense must be based on clear and convincing evidence.

20. *See Turinsky v. Long,* 910 P.2d 590, 595 (Alaska 1996).