Raymond P. **BAILEY**, Appellant,

v.

Charmaine L. **BAILEY**, Appellee.

No. S–10248.

Supreme Court of Alaska.

Jan. 31, 2003.

---

Edward R. Niewohner, Lawrence F. Reger, Niewohner & Associates, P.C., Fairbanks, for Appellant.

Charmaine L. Bailey, pro se, Fairbanks.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

Raymond Bailey appeals the superior court's order excusing his former wife, Charmaine Bailey, from payment of child support arrearages. He argues that the superior court abused its discretion by retroactively modifying Charmaine's child support and that the court's calculation of Charmaine's total arrearages and Raymond's prospective support obligation was clearly erroneous. We conclude that while there was no retroactive modification, the court erred in calculating arrearages and Raymond's prospective support.

## II. FACTS AND PROCEEDINGS

Raymond Bailey and Charmaine Bailey married in June 1980 and have two children—Cara, born October 30, 1980, and Nicholas, born June 22, 1983. The parties divorced in March 1997. Custody and child support terms were governed by an incorporated agreement under which Raymond had primary physical custody of Cara and the parties shared physical custody of Nicholas. Nicholas was to live with Charmaine during the school year and with Raymond during the summer. Regarding child support the parties agreed: "As Husband has primary

physical custody of Cara and the parties have shared physical custody of Nicholas, the child support obligation will be determined by a hybrid of Alaska Civil Rule 90.3(a) and Alaska Civil Rule 90.3(b) as set out in *[T]urinsky v. Long*, 910 P.2d 590 (Alaska 1996) . . . ."

In September 1997 Nicholas began to live with Raymond in Anchorage during the school year. On Raymond's motion the court on July 10, 1998, entered a new child support order. Under this order Charmaine was to pay Raymond "monthly child support beginning September 1, 1998, in the amount of $1,042 a month until the children have reached their 18th birthday or are emancipated or graduated from high school." The court also awarded Raymond back child support in the sum of $16,790.24. Charmaine paid this amount while seeking reconsideration. On reconsideration the court modified the back support award to $13,563.84, leaving Charmaine with a $3,226.40 child support credit. This credit covered Charmaine's September and October 1998 support payments. On October 30, 1998, Cara turned eighteen.

What happened next is in dispute. Charmaine claims that she had Nicholas ask his father how much she should pay in support for just Nicholas, and that Raymond responded—through Nicholas—that she should pay $311.64 per month. Charmaine further claims that her child support credit carried her through January 1999, that she began sending child support checks for Nicholas in February 1999, and that she remained current with her payments, with only a few exceptions. Raymond, however, contends that Charmaine made only three partial child support payments—$311 each for the months of March, May, and June 1999.

Meanwhile, Nicholas continued to reside primarily with his father until November 6, 2000, when he moved back to Fairbanks to stay with his mother. Charmaine moved to modify the existing child custody and support award on March 12, 2001. Raymond opposed Charmaine's motion, claiming that any change in child support for the time before March 12, 2001, would be an invalid retroactive modification, and that Charmaine owed him a substantial sum in child support arrearages. In addition, Raymond pointed out that Nicholas had moved out of Charmaine's home to stay with family friends in April 2001.

A hearing on Charmaine's motion was held on May 23, 2001, and the superior court issued a written ruling the next day. As to custody the superior court ruled that

> Nicholas shall determine which parent he will live with. At present he is living in Fairbanks with family friends and expects to remain there throughout the summer. He will spend time with his mother when possible, but is not comfortable residing in the residence. He will visit his father in Anchorage when convenient for the parties.

As to child support, the court ruled that "Mr. Bailey shall provide Nick reasonable assistance this summer and thereafter as he elects to do so. He shall not be responsible to Ms. Bailey for child support." The court explained that Raymond's prospective child support obligation would have been roughly $1,680 per month, but that "it would be inequitable to require [him] to pay Ms. Bailey child support while Nick is in Fairbanks, considering the fact that Nick resides with family friends and is fairly self-sufficient."

As to Raymond's claim that Charmaine still owed him significant back child support, the court found that Charmaine had underpaid child support by about $429 per month during the roughly thirteen months between October 1999 and November 2000, but that she had made three payments of $311. The court concluded that "[t]his amounted to an underpayment of $4,644," but that "under the circumstances, . . . it would be inequitable to require Ms. Bailey to pay past child support to Mr. Bailey given the fact that Nick lived in her home for at least four months without receipt of child support." Furthermore, the court held that "Ms. Bailey was not required to pay child support once Nick relocated to Fairbanks."

Raymond appeals the superior court's order.

## III. DISCUSSION

### A. Retroactive Modification of Child Support

Raymond's first point on appeal is that the superior court, by extinguishing Charmaine's accrued arrearages, impermissibly engaged in a form of retroactive modification of child support. He notes that retroactive modification of child support arrearages is prohibited under Civil Rule 90.3(h)(2).

Raymond's argument is correct only if a child support order determined the support for Nicholas after Cara turned eighteen.[1] The child support order of July 10, 1998, provided for a payment of $1,042 a month "until the children have reached their 18th birthday or are emancipated or graduated from high school." The court indicated in an amended order dated August 25, 1998, that "it is the Court's impression" that child support for Cara should not continue past her birthday since she was not attending high school. But the order clearly contemplated that support would continue to be payable for Nicholas by providing that monthly child support would continue "until the *children*" became eighteen. Raymond concedes that the monthly amount specified in the order of July 10, 1998, $1,042, was reduced when Cara turned eighteen. After that event was there a child support order that was sufficiently specific to activate the ban on retroactive modification?

We believe that the answer is "no." The amount payable for the support of Nicholas was neither expressed in the order nor was it subject to calculation through ministerial acts controlled by the terms of the order.

At the hearing on Charmaine's motion, Raymond's counsel argued that calculation of the monthly support for Nicholas could be readily done since the figure for the support of both children, $1,042, "was 27 percent, so you have to figure it out what 20 percent would be." Twenty-seven percent is the percentage of adjusted income a noncustodial parent should pay for the support of two children under Civil Rule 90.3(a); twenty percent is the figure for the support of one child. Calculating at the hearing, counsel arrived at a figure of $740 due monthly for the support of Nicholas.

This was accepted by the trial court, but it is mathematically erroneous. The proper figure, assuming Rule 90.3(a) was used in the July 10, 1998 order and was meant to be used when Cara turned eighteen, would be $771.85.[2] The error in calculation is a minor matter. What is important is that the calculations used by the court in July of 1998 to arrive at the support figure for both children of $1,042 are not set out, and the court did not then indicate that it was using Rule 90.3(a) to arrive at that amount.

Because the custody as to both children seems to be "hybrid"—shared as to Nicholas but primary as to Cara—it is not possible to simply assume that Rule 90.3(a), which relates to primary custody, was used to calculate support, rather than some other formula. Moreover, nothing is said in the July 1998 order as to how future support for Nicholas is to be calculated once the requirement to support Cara terminates. Again, it is not possible to assume that the primary custody formula of Rule 90.3(a) should be used, because the July 1998 order seems to indicate that custody of Nicholas will be shared.[3]

The fact that the court at the May 2001 hearing seems to have accepted counsel's contention that Rule 90.3(a) should be used to calculate arrearages under the earlier order is not controlling on the question whether the earlier order was sufficiently definite as to the amount payable for Nicholas's support as to bring into play the bar on retroactive modification of support. The court's

---

1. *See Bennett v. Bennett*, 6 P.3d 724, 728 n. 19 (Alaska 2000) ("Because no child support order existed, the trial court did not have to concern itself with the prohibition against retroactive modification of child support.").

2. Adjusted income = 1042/.27=3859.26 × .20=771.85.

3. The ambiguity arises because the order, in reducing the 1998 arrearages because of summer visitation with Charmaine, refers to the arrangement concerning Nicholas in the present rather than the future tense—"the parties' son resides with Ms. Bailey during the summer months"— and does not provide for a reduction for future summers.

acceptance of counsel's position is a discretionary choice as to how support should be calculated rather than a necessary product of the July 1998 order.

## B. Calculation of the Arrearage

■ As noted, the trial court calculated Charmaine's arrearage at $4,644. Raymond correctly contends that the trial court made a number of mistakes in arriving at this figure.

■ One mistake is that the trial court accounted for only part of the period of the arrearage. The court purported to account for "the roughly thirteen months between October of 1999, and November 2000." This is a mistake of some eleven months, because Cara turned eighteen on October 30, 1998. Support for Nicholas must be calculated from November of 1998 to November of 2000.[4]

The court concluded that Charmaine "underpaid child support in the rough amount of $429 a month, but did make three payments of $311." The court's conclusion that $429 was underpaid is evidently the product of subtracting $311 from counsel's hastily calculated figure of $740 for support for Nicholas once Cara turned eighteen. But the court found that Charmaine had only made three payments of $311. For the other twenty-one months between November of 1998 and November of 2000, there should have been no $311 deduction. But Charmaine should be credited with the remainder of her initial overpayment, $1,142.40.[5]

Finally the court was mistaken in accepting counsel's representation that child support for the period in question was $740 per month. As we have noted, if one assumes that Rule 90.3(a) was used in arriving at the initial support amount for both children and was meant to be used in calculating support for Nicholas after Cara turned eighteen then support should have been $771.85. But these assumptions are not necessarily correct. The court should have made findings setting out both its factual premises and its method of calculating support for Nicholas.[6]

## C. Raymond's Prospective Child Support Obligation

■ Raymond's final point is that the court concluded that the amount of child support Raymond would owe Charmaine after her modification motion, $1,680 per month, was not based on evidence of Raymond's earnings.

Civil Rule 90.3(e) on child support affidavits and documentation requires:

> Each parent in a court proceeding at which child support is involved must file a statement under oath which states the parent's adjusted annual income and the components of this income as provided in subparagraph (a)(1). This statement must be filed with a party's initial pleading ..., motion to modify, and any response to a motion to modify. The statement must be accompanied by documentation verifying the income. The statement must state whether the parent has access to health insurance for the children and, if so, the additional cost to the parent of the children's health insurance.

Here, it appears that the superior court lacked any current income affidavit or documentation on which to base its calculation of Raymond's prospective obligation.

Charmaine points out that the court did have access to Raymond's documentation as

---

4. Raymond contends that child support must be calculated to April 2001, the earliest date at which any change in support could have become effective, based on Charmaine's March 2001 motion to modify. If there had been an effective child support order for Nicholas, the date of the motion would be controlling under the bar on retroactivity. But since there was not an effective order and the bar does not apply, arrearages should be calculated only until Nicholas began to stay with Charmaine in November of 2000. *See Bennett*, 6 P.3d at 727–28. But Raymond as the de jure custodial parent would not owe child support to Charmaine until after the date of the motion. *Id.* at 726–27.

5. As of the end of August 1998, Charmaine had a $3,226.40 child support credit. Her monthly obligation of $1,042 for September and October must be subtracted from that, leaving a credit of $1,142.40.

6. *See Wright v. Gregorio*, 855 P.2d 772, 773 (Alaska 1993) ("Adequate findings of fact on [child support] matters are essential, so that a reviewing court may clearly understand the grounds on which the lower court reached its decision.").

of 1997 and implies that this was adequate basis for a determination of child support as of 2001. She subsequently states, however, that it would be reasonable to expect that Raymond's income "[had] significantly increased since 1997." Charmaine's own statement admits the likelihood that Raymond's income had changed since 1997. Indeed, there is no way to tell how the superior court arrived at Raymond's prospective child support obligation, because as Charmaine admits, "In the Custody and Child Support order of May 24, 2001, the Court did not state the source of its calculations for Raymond's prospective child support obligation."

To the extent that the superior court continues to rely upon an assessment of Raymond's prospective support obligation as an offset, or for other purposes, the obligation should be based upon current income information.

## IV. CONCLUSION

For the above reasons, we vacate the superior court's order of May 24, 2001, insofar as it calculated the amount due from Charmaine for the support of Nicholas and offset that amount against support due from Raymond. On remand the court should recalculate the amount due, make appropriate findings, and enter judgment accordingly.

VACATED and REMANDED for further proceedings consistent with this opinion.