Clifford B. KILLARY, Appellant,

v.

Susan KILLARY, Appellee.

No. S–11639.

Supreme Court of Alaska.

Nov. 10, 2005.

---

Lawrence A. Pederson, Paul J. Nangle & Associates, Anchorage, for Appellant.

Mary–Ellen Meddleton, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

Clifford Killary moved to modify custody and child support, seeking to become the primary custodial parent of Megan Killary. The superior court ordered a stay of Clifford's previous child support obligations while the issues of custody were pending. At the close of proceedings, the superior court reaffirmed Susan Killary as the custodial parent and reinstated Clifford's child support obligation. Upon learning of the court's decision, Megan ran away from home, and at the time of this appeal she is still not living with either parent. Clifford appeals the superior court's decision to reinstate child support payments, arguing that he should not be required to pay Susan child support since Megan does not live with Susan and Susan is not financially supporting Megan. We conclude that child support payments should not have been reinstated unless they were justified by Susan's expenses incurred in an effort to find Megan and secure custody of her and to maintain a suitable place for her pending her return. We remand for evidence and findings on this point.

**FACTS AND PROCEEDINGS**

When the Killarys divorced in 2002 they had one minor child, Megan. Though the parties were awarded joint legal custody of Megan, they agreed that Susan would have primary physical custody and Clifford would have visitation rights and shared physical custody. The parties agreed that Clifford should pay full child support without reference to the shared physical custody periods, and the court so ordered.

Megan lived with Susan until May 2003 when she moved in with Clifford. Susan did not oppose this move. On June 7, 2003, Susan moved to Idaho, while Megan remained with her father in Anchorage. On August 13 Clifford filed a motion to modify custody and child support. Susan did not initially oppose the change of custody, citing Megan's desire not to leave Anchorage, however she was not convinced that the change of custody was in Megan's best interest. While this motion was pending, the trial court stayed collection of child support.

On January 6, 2004, Susan changed her position and opposed Clifford's motion to modify custody. Ultimately, the trial court denied Clifford's motion, noting that Megan's educational needs would be better met in her mother's home.

After Susan's custody was reaffirmed, Megan ran away from Clifford's house to live with friends. On the same day, the trial court issued a writ of assistance to assist Susan in obtaining custody of Megan. Susan was unable to obtain custody of Megan, however, and returned to Idaho without her. Megan made it clear that she was not willing to move back into Susan's house. She also indicated that she was pursuing emancipation.

On March 11 the court reinstated the child support order because "formal custody had been changed to [Susan]." Clifford filed a motion for reconsideration of this order, along with a second motion to modify custody on March 22, 2004. Because neither parent had de facto custody of Megan, the court granted the motion for reconsideration of the order reinstating child support, thereby staying Clifford's obligation to pay child support "until the resolution of the custody issue." In the meantime, Megan moved back in with Clifford.

After a hearing, the court again decided that the best place for Megan was with Susan and ordered another writ of assistance; at some point around this time Megan ran away from Clifford's house again. An emergency hearing was held on June 23 because

neither party had been able to locate Megan. Susan hired a private investigator on July 2.

On July 21, 2004, Susan again filed a motion to "lift" the stay of child support. The trial court granted the motion, reinstating Clifford's obligation to pay child support effective July 1, 2004. Clifford now appeals this order, claiming that Megan is not residing with either parent, and has not resided with Susan since May 26, 2003.

At present Megan is seventeen years old; she will be eighteen on December 9, 2005.

## DISCUSSION

■ Awards of child support are reviewed for an abuse of discretion.[1] An abuse of discretion occurs when "based on the record as a whole this court is left with a 'definite and firm conviction that a mistake has been made.' "[2]

■ Clifford's sole argument is that the trial court erred in continuing the award of child support to Susan when she did not have actual physical custody of Megan. Clifford asserts that *Bennett v. Bennett*[3] and *Corbin v. Corbin*[4] support his contention that Susan is not entitled to child support because she no longer has de facto custody and has stopped supporting Megan financially. Clifford argues that requiring him to pay child support before Megan is located will result in a "windfall" to Susan.

Susan correctly responds that *Bennett* and *Corbin* are distinguishable. These cases address retrospective child support awards in situations where, unlike the present case, there was no pre-existing child support award.[5] She also argues that she is entitled to child support because she did not willingly relinquish custody of Megan and because Megan could move in with Susan any day, even though Megan is currently not living with either parent. Susan asserts that when Megan finally returns to Susan's house, the money will be needed to "help [Megan] put her life back together. . . . It will likely take every cent that Cliff is obligated to pay and more to restore Megan to a productive life." She also contends that she needs child support to maintain a place for Megan in her home so that when Megan returns she will have a place to live. Susan also notes that she "has fought with every penny she has . . . to do what is best for Megan," a reference that appears to include Susan's efforts to locate Megan and obtain her return to Susan's custody.

■ "Child support awards, by their very definition, are intended to benefit the child, not provide a windfall to a parent."[6] Here, the superior court was assessing prospective child support for a runaway child who was not in either parent's custody and had been living in a place not known to either parent for at least part of the preceding six months.[7] The possibility that Megan, who will be eighteen years old on December 9, 2005, may not return to Susan's custody before she reaches the age of majority was evident.

We have stated that "justice is best served if the child support amount reflects the actual responsibilities and burdens of the parties."[8] Since Megan was not in Susan's actual custody, and Susan was not financially supporting Megan, requiring Clifford in a prospective order to pay child support to Susan for Megan might be difficult to justify under this principle. Under Civil Rule 90.3(h)(1) a child support award "may be modified upon a showing of a material change of circumstances." In this case the material change calling for a modification would be Susan's loss of de facto custody through Megan's running away.

---

1. *E.g., Fernau v. Rowdon,* 42 P.3d 1047, 1052–53 (Alaska 2002).

2. *Richmond v. Richmond,* 779 P.2d 1211, 1216 (Alaska 1989) (citation omitted).

3. 6 P.3d 724 (Alaska 2000).

4. 68 P.3d 1269 (Alaska 2003).

5. *See Corbin,* 68 P.3d at 1273.

6. *Bennett,* 6 P.3d at 727; *see also Murphy v. Newlynn,* 34 P.3d 331, 335 (Alaska 2001).

7. Megan ran away in February 2004 and child support was reinstated in August 2004.

8. *Potter v. Potter,* 55 P.3d 726, 730 (Alaska 2002) (quoting *Morino v. Swayman,* 970 P.2d 426, 429 (Alaska 1999)).

But Susan's arguments that support is needed so that she can maintain a suitable home for the eventual return of Megan, and to aid her in securing the return of Megan, might have merit. Such expenditures could well reflect her "actual responsibilities and burdens" as a custodial parent. Ordinarily the amount of child support a non-custodial parent should pay to a custodial parent is arrived at by a formula prescribed by Civil Rule 90.3(a) without the need for a showing of the custodial parent's actual expenses. But we believe that in circumstances such as the present—where the de jure custodial parent is not actually exercising custody or supporting the child but is seeking to do so—a factual showing that the custodial parent has incurred and will continue to incur expenses in the discharge of her responsibilities is necessary. The amount of her expenditures need not precisely equal, or exceed, the amount of monthly child support, but they should at least fall within an approximate range of the latter. Understandably, since this is a subject not covered by Rule 90.3 or prior case law, such a showing was not made. A remand for evidence and findings on this point is therefore necessary.

While we believe that one parent should not ordinarily be ordered prospectively to pay child support for a child who has run away and is not being cared for by the custodial parent unless the custodial parent continues to incur expenses related to her custodial responsibilities, care must be taken that this rule is not abused. It is conceivable that some non-custodial parents might encourage their children to run away, or stay at large, in order to avoid paying child support. If a court should find that this has occurred, one remedy might be the reimposition (or continued imposition) of child support payments. This subject also was not addressed by the superior court in this case. On remand, it should not be considered to be foreclosed by this opinion.

## CONCLUSION

For the above reasons we VACATE the superior court's order reinstating Clifford's child support obligations and REMAND this case for further proceedings in accordance with this opinion.