**Anita JOHN, Appellant,**

v.

**John BAKER, Appellee.**

**No. S–11176.**

Supreme Court of Alaska.

Dec. 16, 2005.

**3.** *Id.* at 403, 28 S.Ct. 133.

**4.** 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909).

**5.** *Id.* at 355, 29 S.Ct. 511.

**6.** 46 U.S.C.A. app. §§ 761–67 (2005).

**7.** *In re Air Crash*, 209 F.3d at 206.

**8.** 498 U.S. 337, 341–42, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).

**9.** *In re Air Crash*, 209 F.3d at 206.

**10.** *Id.*

**11.** 262 U.S. 100, 43 S.Ct. 504, 67 L.Ed. 894 (1923).

**12.** U.S. Const amend. XVIII, § 1.

**13.** *Cunard*, 262 U.S. at 123, 43 S.Ct. 504.

**14.** *In re Air Crash*, 209 F.3d at 206 (quoting *Cunard*, 262 U.S. at 123, 43 S.Ct. 504).

Andrew Harrington and Mark Regan, Alaska Legal Services Corporation, Fairbanks, for Appellant.

Diane L. Wendlandt, Paul R. Lyle, and Robert C. Nauheim, Assistant Attorneys General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for State of Alaska, Child Support Enforcement Division.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

In 2002, after multiple appeals to this court, the superior court referred a child custody dispute between Anita John and John Baker to the Native Village of Northway tribal court. After the referral, the Child Support Enforcement Division asked the superior court whether its standing child support order—which had been issued early in the course of the proceedings and well before any of the appeals—remained valid and enforceable. The division's simple inquiry mushroomed into a wholesale battle over the reach of tribal court jurisdiction. The trial court ultimately determined that only child custody and not child support had been referred to the tribal court. The trial court therefore concluded that its child support order remained valid and that the division had authority to enforce the order. The court then considered the jurisdictional issue at some length and concluded that the courts of Alaska Native villages lack jurisdiction over child support disputes. We conclude that the superior court correctly ruled that child support had never been referred to the tribal court and that the division could enforce the court's child support order. This disposes of the case and makes it unnecessary to resolve the additional jurisdictional issues.

## II. FACTS AND PROCEEDINGS

Anita John[1] and John Baker are Alaska Natives. John is a member of the Native Village of Mentasta. Baker is a member of the Native Village of Northway. Although never married, John and Baker lived together in a marriage-like relationship from 1991 to May of 1993. During their relationship, they had two children, John Malone Baker II (born in 1991), and Emmanuel Kenneth Baker (born in 1992). After the parties separated in 1993, they shared custody of the chil-

---

1. John has married and is now Anita Adams. To maintain consistency, we refer to her by her prior name.

dren under an informal arrangement with the children residing primarily with John.

In July of 1995, after difficulties arose concerning their custody arrangement, Baker petitioned for custody before the Native Village of Northway Tribal court. The tribal court awarded the parents shared custody, with each parent keeping the children for alternating months. The tribal court also directed the parties to "help each other financially." Baker claims that the court also told them orally that neither was to "hit" the other with child support.

Shortly after the tribal court issued its decision, Baker petitioned the Fairbanks superior court for custody and child support. John moved to dismiss, arguing that the tribal court had already issued a decision on the matter and that it retained jurisdiction. The superior court denied her motion, and, in April 1997, awarded full custody to Baker and ordered John to pay child support.

John appealed. In *John v. Baker I*, this court held that tribal and state courts share concurrent jurisdiction over child custody disputes where the child is eligible for membership in the tribe.[2] We remanded the case to the superior court to determine whether, under principles of comity, "the tribal court's resolution of the custody dispute ... should be recognized."[3]

On remand, the superior court declined to extend comity to the tribal court. John again appealed. In *John v. Baker II*,[4] we reversed and remanded the case with instructions to the court to refer the action to the tribal court. On October 4, 2001, the superior court referred the matter "to the Northway Tribal Court to conduct further child custody proceedings."[5]

One week later, John's attorney sent a letter to the Child Support Enforcement Division (the division) informing it that the case had been transferred to the tribal court. He requested that the division cease attempting to collect "any ongoing support pursuant to the superior court's child support order(s)."

The division filed a motion before the superior court asking it to clarify whether, given the referral of the matter to the tribal court, the division could enforce the superior court's child support order.

The division's motion proved to be the beginning of an escalating exchange of voluminous and detailed briefs and supplemental briefs between the parties. Over the course of this briefing John argued that this court's holding in *John I*—that tribal courts have jurisdiction over child custody disputes—also encompassed jurisdiction over child support. She also argued that the superior court referred the case in its entirety—including both child custody and child support—to the tribal court, and that the superior court's child support order was therefore no longer binding. In addition, she maintained that Northway's child support proceedings were entitled to full faith and credit: she contended that the land on which the relevant acts occurred qualified as Indian Country, and she reasoned that because federal law requires full faith and credit to be granted to child support orders that issue from courts of Indian Country, Northway's order merited full faith and credit.

For its part, the division argued that the superior court referred only custody and not support to the tribal court. It also argued that Alaska Native villages lack subject matter jurisdiction over child support. It argued that if tribal courts could exercise jurisdiction over child support, they would be able to control and direct the actions of division officials. This, the division argued, would run afoul of the Supreme Court's determination in *Nevada v. Hicks* that tribal courts lack jurisdiction over state officers enforcing state law since such jurisdiction would involve tribal control over those officers.[6] The division

---

**2.** *John v. Baker*, 982 P.2d 738, 759 (Alaska 1999).

**3.** *Id.* at 765.

**4.** *John v. Baker*, 30 P.3d 68 (Alaska 2001).

**5.** While the comity issue was pending before the superior court, we considered another appeal in this case. *John v. Baker*, No. S–09556 (March 29, 2001). Although that appeal concerned child support, it is not relevant to our resolution of the present appeal.

**6.** 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001).

also argued that even if Northway might have subject matter jurisdiction, it would be inappropriate to extend comity to Northway's order because the village would not qualify for federal child support enforcement grants.

After hearing oral argument, the superior court issued a decision. The court concluded that there was no tribal court order to which it could extend comity, that child support had never been referred to the tribal court, and that the superior court retained jurisdiction. It therefore concluded that its child support order was still binding and enforceable by the division. It also ruled in the alternative that the village lacked jurisdiction over child support disputes.

John appeals.

## III. DISCUSSION

■ This case requires us to interpret four court orders.[7] We must determine whether the issue of child support already resides with the tribal court by virtue of orders issued either by this court, by the superior court, or by the tribal court. First, we must determine whether our opinions in *John I* or *John II* required the superior court to refer both child custody *and* child support to the tribal court, or whether, as the division contends, we only addressed child custody in those opinions. Second, we must determine whether the superior court's response to *John II*—in which it referred the matter to the tribal court—included child support or whether the superior court referred child custody alone to the tribal court. If both this court and the superior court intended that only child custody be referred to the superior court, we will then need to consider whether the tribal court's original order—in which it directed the parties to help each other financially—was a support order to which the Alaska courts should extend comity.

## A. This Court's Rulings in *John I* and *John II*

John argues that in *John I* we implicitly conceded that the courts of Alaska Native villages have jurisdiction to issue child support orders. She argues that in *John II*, when we directed the superior court to refer the action to the tribal court, we intended that both the child custody and the child support matters be referred to the tribal court.

We disagree.

The question this court addressed in *John I* was whether "Northway Village had the jurisdiction to adjudicate a custody dispute involving children who are tribal members."[8] In our statement of facts and proceedings, we described only the custody aspects of the case and made no mention of child support.[9] And in our conclusion, we held that "[t]ribal courts in Alaska have jurisdiction to adjudicate child custody disputes involving tribal members."[10]

To be sure, both the court and the dissent referred in passing to the possibility that an effect of *John I's* holding might be to allow tribal courts to issue child support awards that did not replicate the child support schedule of Alaska Civil Rule 90.3.[11] But a passing reference to child support does not transform our lengthy consideration of child custody into a holding about child support.

Our conclusion in *John II* supports this reasoning. In *John II*, we remanded the case to the superior court and we expressly stated that the reason for the remand was so that it could refer the matter "to the Northway court to conduct further child custody proceedings."[12]

Given the plain language of *John I* and *John II*, it is clear that we believed that the custody and support matters were separate and that the transfer of the former to the

---

7. The proper interpretation of a court order is a question of law to which we apply our independent judgment. *E.g., Bennett v. Bennett,* 6 P.3d 724, 726 (Alaska 2000).

8. *John I,* 982 P.2d at 744.

9. *Id.* at 743–44.

10. *Id.* at 765.

11. *Id.* at 764 n. 185 (Fabe, J., for the court) and 802 (Matthews, J. dissenting).

12. *John II,* 30 P.3d at 78.

tribal court did not entail the transfer of the latter.

## B. The Superior Court's 2001 Order

Following our remand in *John II*, the superior court referred the matter to the Northway tribal court. John argues that this referral included child support. But the superior court's order specified that "[t]his matter is referred to the Northway Tribal Court to conduct further child custody proceedings." This language clearly indicates that child custody and not child support were referred to the tribal court.

## C. The Tribal Court's Original Order

Once the superior court concluded that its previous order did not refer child support to the tribal court, it considered John's argument that Northway's 1995 custody order included a support order and that the superior court ought to extend comity to that order. The superior court observed that the tribal court "required that each parent 'help each other financially' " and instructed the parties not to " 'hit the other with child support.' " The superior court concluded that the tribal court's "two statements do not constitute a valid support order." Because the court concluded that there was no tribal support order to which it could grant comity, the court determined that its own previous support order was the only valid order and that it retained jurisdiction over child support.

We agree. Although a tribal child support order need not match the format of a support order issued by the Alaska courts, it must, at a minimum, be concrete enough to be enforceable. Northway's order does not state a specific dollar amount and provides no criteria by which to judge whether the parties were fulfilling their obligations. We therefore agree with the superior court that Northway's 1995 order was not a recognizable child support order to which the court could extend comity.

 This interpretation is supported by Northway Village's own assessment of its 1995 order. In one of the amicus briefs it filed in *John I*, Northway Village itself maintained that the tribal court's 1995 order did not include child support.[13] Although we generally apply de novo review when interpreting a court order,[14] we think that where an order has issued from a foreign jurisdiction it is appropriate for us to consider that jurisdiction's interpretation of its own order. Northway's interpretation supports our understanding of the tribe's 1995 custody order.

We also note that, given the procedural posture of the case, it would not have been proper for the superior court to refer any ongoing issues of child support to the tribal court. The superior court was never presented with a motion either requesting that comity be extended to the tribal court's putative support order or requesting that the superior court relinquish its ongoing jurisdiction and allow the tribal court to assume jurisdiction over child support. Rather, the division merely asked whether the superior court retained jurisdiction over child support. Because no formal request for comity had been made and the issue of child support had not been referred to Northway, the superior court correctly determined that it retained jurisdiction over child support. Accordingly, we affirm the superior court's conclusion that the division could enforce the superior court's child support order.[15]

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's decision that it retained jurisdiction over child support and that the division has authority to enforce that order.

---

**13.** Amicus R. Br. of Native Village of Northway, *John v. Baker*, No. S–08099, filed May 26, 1998, p. 8.

**14.** *State, CSED v. Wetherelt*, 931 P.2d 383, 387 n. 4 (Alaska 1997).

**15.** Our resolution of the case on this ground makes it unnecessary to express any opinion on other issues addressed by the superior court and raised by the parties.