NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

NATHANIEL HICKS JR.,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11826
Trial Court No. 3AN-13-11738 CR

O P I N I O N

No. 2506 — June 24, 2016

Appeal from the District Court, Third Judicial District, Anchorage, Jo-Ann Chung, Judge.

Appearances: Evan Chyun, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard, Judge.

Judge ALLARD, writing for the Court.
Judge MANNHEIMER, concurring.

Nathaniel Hicks Jr. was convicted of four counts of first-degree unlawful contact for telephoning his girlfriend, N.A. Hicks made these phone calls from jail, where he was awaiting trial on a charge that he assaulted N.A.

On appeal, Hicks argues that Alaska courts have no power to prohibit a defendant in pretrial detention from contacting the alleged victim of the crime.

According to Hicks, courts have the authority to prohibit a defendant in pretrial detention from engaging in this contact only if the victim separately petitions the court to issue a domestic violence protective order under Alaska Statute 18.66.

For the reasons explained here, we reject Hicks's argument.

*Facts and proceedings*

On July 20, 2013, Hicks was arraigned on a misdemeanor charge of assaulting his then-girlfriend, N.A. At Hicks's arraignment, the magistrate judge orally set conditions of bail, including the condition that Hicks not contact N.A. The judge later formalized her bail order in a written order that set out Hicks's conditions of bail release. Those written bail conditions also contained the provision that Hicks have "[no] direct or indirect contact" with N.A.

However, Hicks was never released on bail. Instead, he remained in pretrial detention for several months. On October 25, 2013, Hicks called N.A. four times from jail, leaving messages on her voice mail. Based on these phone calls, the State charged Hicks with four counts of first-degree unlawful contact.[1]

Before trial, Hicks's attorney attacked these charges on several bases. The defense attorney argued, in passing, that Alaska courts have no authority to impose no-contact orders on defendants who are in pretrial detention. But the attorney also argued that Hicks had not received constitutionally adequate notice that the no-contact provision of the bail order applied to him when he was still in jail. The district court ruled against Hicks on these claims, and the case proceeded to trial.

---

[1] AS 11.56.750(a)(1)(A). Hicks was also charged with violating a domestic violence protective order, but those charges were later dismissed because Hicks had not received proper notice of the protective order.

At trial, the main issue before the jury was whether Hicks acted with the required culpable mental state — that is, whether he recklessly disregarded the circumstance that his phone calls to N.A. violated the court's no-contact order.

Hicks's attorney argued that Hicks had not acted in reckless disregard of the order because he reasonably believed that the order only applied after he was released on bail. The prosecutor argued that Hicks knew or should have known that the no-contact bail order also applied to him in jail, and that even if he honestly believed that the no-contact provision did not take effect until he was released on bail, Hicks's belief was unreasonable.

The jury convicted Hicks of all four counts of first-degree unlawful contact. He now appeals.

*Why we reject Hicks's claim that the judge had no authority to order him not to contact N.A. while he was in pretrial detention*

As discussed in Chief Judge Mannheimer's concurring opinion, there are significant problems with the way this case was prosecuted and argued to the jury. But Hicks does not raise any of these issues in this appeal. Instead, Hicks's sole claim on appeal is that, as a general matter, Alaska courts have no authority to order a defendant in pretrial detention to refrain from contacting the alleged victim of the crime.

Hicks points out that the Alaska legislature has enacted statutes expressly authorizing trial courts to issue no-contact orders as a condition of a defendant's bail release or as a component of a defendant's sentence.[2] But the legislature has enacted no

---

[2]   *See* AS 12.30.011(b)(8) (providing that a court may require a defendant to avoid all contact with the alleged victim as a condition of bail release); AS 12.55.015(a)(12) (providing that a court may order a defendant to have no contact with a victim or witness as part of the defendant's sentence).

equivalent statute expressly authorizing courts to impose no-contact orders on defendants in pretrial detention.

Hicks argues that, in the absence of a statute expressly authorizing the court to issue a no-contact order to a defendant in pretrial detention, the courts have no power to impose no-contact orders on pretrial detainees. Thus, Hicks contends, the judge's no-contact order was void, and he could not lawfully be convicted of violating it.

Hicks's argument rests on the erroneous assumption that the courts of this state have only the authority expressly conferred on them by statute. But this Court and the Alaska Supreme Court have repeatedly recognized that "in the absence of a governing statute or constitutional provision, the judiciary retains the power to declare the common law and to promulgate supervisory rules of practice to govern litigation."[3]

We relied on this principle in *Dobrova v. State*.[4] In that case, the sentencing court refused to release the defendant on bail pending the defendant's sentence appeal; the court concluded that it had no power to grant bail release to the defendant because the pertinent statute spoke only of bail for defendants who appeal their *convictions*, not their sentence.[5] Even though the bail statute did not expressly authorize courts to grant bail release in sentence appeals, this Court held that courts had the common-law power to grant bail to defendants who appealed their sentences, and that, because the Alaska legislature had not limited that common-law power by statute, Alaska courts retained that

---

[3]   *Hosier v. State*, 957 P.2d 1360, 1363 (Alaska App. 1998) (citing *Bauman v. Day*, 892 P.2d 817, 828 (Alaska 1995)); *see also Surina v. Buckalew*, 629 P.2d 969, 973 (Alaska 1981); *Beran v. State*, 705 P.2d 1280, 1288 (Alaska App. 1985). *See generally* AS 01.10.010 ("So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state.").

[4]   674 P.2d 834 (Alaska App. 1984).

[5]   *Id.* at 835.

power.[6] On petition for hearing, the supreme court affirmed our decision — emphasizing again that, in the absence of a statute granting or denying the right to bail pending a sentence appeal, "there exists no basis for concluding that the legislature intended to limit the inherent authority of the court."[7]

This same principle of common-law authority governs our decision in Hicks's case. As the Court of Appeals for the Ninth Circuit has explained, courts have the inherent power to protect victims and witnesses — a power that stems from the "indisputably ... broad powers [of the courts] to ensure the orderly and expeditious progress of a [criminal] trial."[8] This inherent judicial authority is not unlimited: it must be exercised in a manner that does not explicitly conflict with constitutional or statutory law,[9] and that does not defeat the policies embodied in those laws.[10] But unless the legislature removes or limits this common-law judicial power, courts may continue to exercise it.

Here, there is no statute that either grants or denies Alaska courts the authority to impose no-contact orders on defendants in pretrial detention. Thus, Alaska trial courts retain their inherent authority to issue such no-contact orders to protect

---

[6] *Id.*

[7] *State v. Dobrova*, 694 P.2d 157, 158 (Alaska 1985).

[8] *Wheeler v. United States*, 640 F.2d 1116, 1122-25 (9th Cir. 1981) (quoting *Bitter v. United States*, 389 U.S. 15, 16 (1967)).

[9] *See Hosier v. State*, 957 P.2d 1360, 1363 (Alaska App. 1998); *see also Titus v. State,* 305 P.3d 1271, 1282 (Alaska 2013); *Dominguez v. State*, 181 P.3d 1111, 1114 (Alaska App. 2008); *Lonis v. State*, 998 P.2d 441, 445 (Alaska App. 2000); *Stiegele v. State*, 685 P.2d 1255, 1261 (Alaska App. 1984).

[10] *Lonis*, 998 P.2d at 445.

victims and other witnesses.[11] Moreover, the Alaska legislature directly recognized this inherent authority in 2013 when it amended AS 11.56.750 to make it a crime for a defendant to violate a no-contact order "while under official detention."[12] The committee discussions of that legislation indicate that legislators presumed courts had the authority to impose these no-contact orders.[13]

Courts do not have the authority to interfere with decisions that are committed to the discretion of the Department of Corrections while a defendant is incarcerated, such as the decision to house a prisoner in a particular facility.[14] But the no-contact order in this case did not infringe on that executive authority; the order only

---

[11] This authority is subject to the requirements of due process, equal protection, and other constitutional constraints. *See, e.g., Williams v. State*, 151 P.3d 460 (Alaska App. 2006) (striking down as unconstitutional bail statutory provision that prohibited all persons charged with domestic violence from returning to the residence of the alleged victim while on pretrial release — without any opportunity for judicial review or any judicial findings).

[12] AS 11.56.750(a)(1)(A)(iii) (effective July 1, 2013), as amended by ch. 43, §§ 9, 48, SLA 2013.

[13] *See* ch. 43, § 9, SLA 2013; Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 2:19:40 p.m. (Jan. 30, 2013); Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 1:45:17 p.m. (Feb. 11, 2013); Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 1:55:00 p.m. (Feb. 18, 2013); Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 9:51:18 a.m. (Mar. 18, 2013); Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 2:07:24 p.m. (Mar. 22, 2013); *see also* January 15, 2013, Governor's Transmittal Letter for Senate Bill 22, 2013 Senate Journal 38 (stating the bill would "restrict offenders in custody from contacting a victim").

[14] *See Rust v. State*, 582 P.2d 134, 137-38, *modified on rehearing*, 584 P.2d 38 (Alaska 1978); *see also State v. Hiser*, 924 P.2d 1024, 1025 (Alaska App. 1996).

constrained Hicks's conduct. This type of no-contact order falls squarely within the authority of the courts.

Hicks also argues that imposing a no-contact order on a person who is in pretrial detention violates the presumption of innocence because it is a form of punishment. We find no merit to this claim. As a general matter, no-contact orders are not imposed to punish the defendant, but to protect victims or other witnesses — thus ensuring public safety and the integrity of the judicial process.[15] Hicks has not shown that the no-contact order in his case was issued to punish him, rather than to protect the victim.

For these reasons, we uphold the district court's decision that Alaska courts have the authority to impose no-contact orders on defendants who remain in pretrial detention. We therefore affirm Hicks's unlawful contact convictions.

We emphasize that we are not deciding whether the arraigning judge's order actually prohibited Hicks from contacting N.A. while he was in jail (as opposed to prohibiting him from contacting N.A. after he was released on bail), or whether Hicks received constitutionally adequate notice of the no-contact order, as those questions are not before us.

As a general matter, however, we encourage courts to ensure that defendants are fully informed of the scope of any no-contact order so that it is clear to everyone whether the court is imposing the restriction as a condition of bail release, or to govern the defendant's conduct while in custody, or both.

---

[15] *See, e.g.*, *Goodwin v. Commonwealth*, 477 S.E.2d 781, 784 (Va. App. 1996) (concluding that a protective order was remedial and did not constitute punishment for double jeopardy purposes); *In re Arseneau*, 989 P.2d 1197, 1203-04 (Wash. App. 1999) (holding that a prison-imposed no-contact order was not punitive and did not violate the double jeopardy or ex post facto clauses).

*Conclusion*

    We AFFIRM the judgment of the district court.

Judge MANNHEIMER, concurring.

There are significant problems with Hicks's conviction in this case, but those problems are not raised in Hicks's appeal.

As explained in Judge Allard's lead opinion, Hicks raises one argument on appeal: the argument that, absent an explicit grant of authority by the legislature, a court has no authority to prohibit a defendant from contacting the victim of the alleged offense while the defendant is in jail awaiting trial. I join Judge Allard in rejecting that argument — but I nevertheless have reservations about the validity of Hicks's conviction.

The fact that Hicks's arraigning judge had the *authority* to prohibit him from contacting the alleged victim while he was in jail does not answer the question of whether Hicks's judge *actually issued* such an order. I have listened to the audio recording of Hicks's arraignment. The arraigning judge told Hicks that one of his conditions of release (if he posted bail) was to refrain from contacting the alleged victim. But it appears that the judge never said that this prohibition took effect immediately — that it was not simply a condition of Hicks's release, but that it also governed Hicks's conduct while he was in jail.

Even assuming that it was the judge's *intention* to have this prohibition take effect immediately, it is doubtful that the judge's words gave Hicks reasonable notice that the prohibition took effect immediately.

This brings me to a second problem in Hick's case: the prosecutor's summation to the jury at the conclusion of Hicks's trial. In his summation, the prosecutor expressly argued to the jury that even if the arraigning judge never directly told Hicks that the prohibition on contacting the victim took effect immediately, and even if Hicks did not understand that the prohibition took effect immediately, Hicks could nevertheless properly be convicted if Hicks *should have known* that the judge would

– 9 –                                                                                          2506

have wanted the prohibition to take effect immediately, regardless of what the order actually said.

> *Prosecutor*: [E]ven if you think it's possible that somehow, in his heart of hearts, ... the defendant actually thought [that the prohibition only applied if he was released on bail], that's not enough [for him to escape conviction]. He's still guilty. Because I don't have to prove that he actually knew [this] ... . What I have to prove is that his behavior grossly deviated from what a reasonable person would do in the circumstances. ... An ordinarily prudent person, a person who uses common sense.
>
> And would a person who uses common sense hear [what the arraigning judge said] and come to the conclusion [that], as long as I'm in jail, those phone calls [to the victim] are okay? Of course they wouldn't.

The prosecutor returned to this same theme in the rebuttal portion of his summation:

> *Prosecutor*: Let's listen one more time to what the defendant heard [at his arraignment,] and what the judge ordered.
>
> [A 49-second audio excerpt is played for the jury]
>
> *Prosecutor*: "Don't have any contact with her." Not "Don't have any contact with her once you get released." And that's just common sense, right? [Because] jail is more restrictive than not being in jail. [When] you get out of jail, you expect to have fewer restrictions on what you can do, who you can associate with, who you can call, rather than more [restrictions]. You heard from Mr. Sherry [of the district attorney's office]; he's never encountered a single case where a judge [expressly] allowed someone to have

contact in jail, but not while they're out on bail. It just doesn't make sense. So ... it's really the only natural way to understand [the arraigning judge's order].

[But] frankly, what [Mr. Hicks] personally, individually, subjectively thought ... is legally not very important. What matters is what a reasonable person would have done, how a reasonable person would have understood that order. It's common sense. A reasonable person hears, "Don't have contact with her." A reasonable person would know, "I'm not allowed to have contact with her." Contacting her is a gross deviation — and that's the legal standard, that's the language you're going to hear — a gross deviation from how a reasonable person would act. And it's that simple.

In other words, the prosecutor seemingly argued that Hicks should be convicted because it was reasonable to think that Hicks's judge wanted the prohibition to cover Hicks's actions while he was in jail — regardless of how Hicks actually understood the judge's order, and regardless of what the order actually provided.[1]

Obviously, since Hicks did not raise these issues on appeal, the State has never had the opportunity to respond to them. It would be improper to reverse Hicks's conviction simply because the record raises these questions. But I would be remiss if I failed to point out these significant problems in the proceedings that led to Hicks's conviction.

---

[1] The proper interpretation of a court order or judgement is a question of law. *John v. Baker*, 125 P.3d 323, 326 n. 7 (Alaska 2005); *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000); *Luckart v. State*, 270 P.3d 816, 820 (Alaska App. 2012).